486 S.E.2d 89

**JOE HARDEN BUILDERS, INC., Plaintiff,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Defendant.**

No. 24628.

Supreme Court of South Carolina.

Heard April 16, 1997.

Decided June 2, 1997.

C. Craig Young and Hugh L. Willcox, Jr., both of Willcox, McLeod, Buyck & Williams, Florence, for plaintiff.

Robert T. Strickland and Andrew E. Haselden, both of Barnes, Alford, Stork & Johnson, L.L.P., Columbia, for defendant.

MOORE, Justice:

This case is before us on certification from the United States District Court to interpret the language of a standard occurrence insurance policy.

## FACTS

Plaintiff (Contractor) brought this declaratory judgment action to determine coverage under an insurance policy issued by defendant (Insurer) to Precision Concrete. Contractor was the general contractor for the Carolina Winds condominium project and subcontracted to Precision construction of the building's twelve-story concrete frame consisting of columns and floor slabs. Precision misaligned the concrete columns and floor slabs. To compensate for the misalignment, the masonry contractor modified construction of the exterior veneer brick wall. As a result, this brick wall, which was not intended for structural support, eventually began cracking.

The condominium owner sought damages from Contractor. After settling with the owner, Contractor won an arbitration award against Precision Concrete for $302,800 and sought payment from Insurer under Precision's insurance policy. The policy in question provides coverage for an "occurrence" and includes the following definitions:

**occurrence:** an accident, *including continuous or repeated exposure to conditions, which results in bodily injury or property damage* neither expected nor intended from the standpoint of the insured.

**property damage:** (1) physical injury to or destruction of tangible property *which occurs during the policy period,* including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed, provided such loss of use is caused by an occurrence during the policy period.

(Emphasis added). We agreed to answer the following question certified by Judge Traxler.

## QUESTION

Where defective construction causes progressive property damage that is otherwise covered by insurance, is the property damage deemed to occur:

1. When the concrete frame is constructed out of plumb;

2. When the masonry contractor knowingly builds the defective brick wall;

3. When the failure of the brick wall is manifest;

4. When the owner actually discovers the failure of the brick wall; or

5. At some other time?

## DISCUSSION

Many courts have grappled with the issue of coverage under an occurrence policy when there is progressive damage that is not apparent at the time of the underlying injury-causing event. *See generally* Annot. 14 A.L.R. 5th 695 (1993). In determining when coverage is triggered, we have considered the four main theories set forth below.

### 1) *Coverage triggered at time of injury-causing event*

Under this theory, coverage is triggered at the time of the underlying injury-causing event, even though no damage has yet occurred, and the policy in effect at the time of this underlying event covers all the ensuing damage.

We find this theory of coverage conflicts with the plain language of the policy. The policy provides coverage for an occurrence that causes property damage *"which occurs during the policy period."* This provision clearly focuses on the time the *damage* occurs and not on the time of the underlying event that eventually caused the damage. An overwhelming majority of jurisdictions have rejected the argument that coverage is triggered at the time of the injury-causing event because such an interpretation conflicts with this provision of a standard occurrence policy. *See, e.g., Prieto v. Reserve Ins. Co.,* 340 So.2d 1282 (Fla.App.1977); *Jenoff, Inc. v. New Hampshire Ins. Co.,* 558 N.W.2d 260 (Minn.1997); *Greenlee v. Sherman,* 142 A.D.2d 472, 536 N.Y.S.2d 877 (1989); *Friendship Homes, Inc. v. American States Ins. Cos.,* 450 N.W.2d 778 (N.D.1990); *CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co.,* 668 A.2d 647 (R.I.1995); *Dorchester Dev. Corp. v. Safeco Ins. Co.,* 737 S.W.2d 380 (Tex. App.1987). Accordingly, we reject the time of the injury-causing event as the trigger for coverage when no damage has yet occurred.[1]

### 2) *Coverage triggered when injury manifested*

Under this theory, damage is deemed to occur at the time it is manifested or discovered, thus triggering coverage for all the ensuing damage under the policy in effect at the time of manifestation, even if some damage actually occurred earlier but was undetected.

Insurer argues our decision in *Spinx Oil Co. v. Federated Mut. Ins. Co.,* 310 S.C. 477, 427 S.E.2d 649 (1993), is dispositive. In *Spinx,* an environmental pollution case, we held

---

1. Contractor contends our decision in *Boggs v. Aetna Cas. & Sur. Co.,* 272 S.C. 460, 252 S.E.2d 565 (1979), is dispositive and requires coverage from the time of the underlying event. *Boggs* held only that the negligent placement of a house constituted an "occurrence" under the policy. There was no issue in *Boggs* concerning whether coverage depended on the time of the underlying event or the ensuing damage if both did not occur during the policy period.

coverage was triggered when the damage was "first manifested." The policy in question provided coverage for a pollution incident that *commenced* on or after the effective date. Because of the difficulty of determining when the pollution incident actually commenced, we interpreted "commenced" to mean when damage was first discovered. In so holding, we relied on a case holding damage occurred when it was "first discovered," *Mraz v. Canadian Universal Ins. Co.*, 804 F.2d 1325 (4th Cir.1986), and concluded "commence" and "occur" should be interpreted synonymously.

We decline to follow *Spinx* in this case. In *Spinx*, we were concerned solely with construing the "commence" language of that particular policy and not analyzing a standard occurrence policy which covers damage caused by a "continuous or repeated exposure." Applying the manifestation trigger used in *Spinx* to this case would conflict with the plain language of the policy. Several courts have rejected the manifestation trigger because nothing in the standard occurrence policy requires that the property damage actually be manifested or discovered during the policy period. *See, e.g., Sentinel Ins. Co. v. First Ins. Co. of Hawai'i, Ltd.*, 76 Hawai'i 277, 875 P.2d 894 (1994); *Harford County v. Harford Mut. Ins. Co.*, 327 Md. 418, 610 A.2d 286 (1992); *Trustees of Tufts University v. Commercial Union Ins. Co.*, 415 Mass. 844, 616 N.E.2d 68 (1993). Accordingly, we reject a manifestation trigger as the appropriate trigger of coverage.

3) *Coverage triggered continuously from time of injury-causing event while damage progresses*

Under this theory, coverage may be triggered at any point from the time of the underlying injury-causing event until the damage is complete, allowing coverage under any policy in effect during this entire time. Some courts have adopted this theory to give effect to the language in the standard occurrence policy which provides coverage for a "continuous or repeated exposure to conditions." *See, e.g., Montrose Chemical Corp. v. Admiral Ins. Co.*, 42 Cal.Rptr.2d 324, 10 Cal.4th 645, 913 P.2d 878 (1995); *Gruol Constr. Co. v. Ins. Co. of North Amer.*, 11 Wash.App. 632, 524 P.2d 427 (1974).

We find this trigger gives effect to the policy provision regarding a continuous or repeated exposure but that it suffers from the same problem as the first theory discussed above because it triggers coverage from the time of the injury-causing event even if no damage has yet occurred. Again, such an interpretation conflicts with the plain language of the policy which provides that damage must occur during the policy period. Accordingly, we adopt a continuous trigger theory but modify it as discussed below.

4) *Coverage triggered at the time of an injury-in-fact*

Under this theory, coverage is triggered whenever the damage can be shown in fact to have first occurred, even if it is before the damage became apparent, and the policy in effect at the time of the injury-in-fact covers all the ensuing damages. This theory covers instances where an insured may be able to prove in retrospect that damage occurred during the policy period even though damage was not yet manifested at the time.[2] *Sentinel, supra; Abex Corp. v. Maryland Cas. Co.,* 790 F.2d 119 (D.C.Cir.1986). Because we find the injury-in-fact trigger consistent with the policy's requirement that damage occur during the policy period, we adopt it in conjunction with a continuous trigger of coverage. *See U.S. Gypsum Co. v. Admiral Ins. Co.,* 268 Ill.App.3d 598, 205 Ill.Dec. 619, 643 N.E.2d 1226 (1994) (injury-in-fact trigger and continuous trigger are on the same continuum and are complementary); *Industrial Steel Containers Co. v. Fireman's Fund Ins. Co.,* 399 N.W.2d 156 (Minn.App.1987) (rejecting argument that there can be only one occurrence in continuous injury case and applying actual injury rule).

## CONCLUSION

We hold coverage is triggered at the time of an injury-in-fact and continuously thereafter to allow coverage under all policies in effect from the time of injury-in-fact during the progressive damage. Such an injury-in-fact/continuous trigger does not penalize the insured by requiring a manifestation of damage during the policy period, nor does it penalize the

---

2. As a practical matter, manifestation will often be the first proof of an injury-in-fact.

insurer by extending coverage from the time of the underlying event when no injury has yet occurred. We conclude this interpretation of the policy best meets the fair expectations of the parties under the language of the policy. Further, this theory of coverage will allow the allocation of risk among insurers when more than one insurance policy is in effect during the progressive damage. *See Sentinel, supra.*

In this case, we decline to make any factual finding regarding the application of this trigger of coverage and leave this determination to the district court.

**CERTIFIED QUESTION ANSWERED.**

FINNEY, C.J., and TOAL, WALLER and BURNETT, JJ., concur.