**SPARTAN PETROLEUM COMPANY, INCORPORATED, Plaintiff–Appellee,**

v.

**FEDERATED MUTUAL INSURANCE COMPANY, Defendant–Appellant.**

No. 97–2556.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 30, 1998.

Decided Dec. 17, 1998.

**ARGUED:** Laura Jean Hanson, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota, for Appellant. Kevin Augustus Dunlap, Parker, Poe, Adams & Bernstein, L.L.P., Spartanburg, South Carolina, for Appellee. **ON BRIEF:** Susan M. Radde, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota; Richard R. Mehrhof, Jr., Allgood, Childs, Mehrhof & Millians, Augusta, Georgia, for Appellant. Steven D. Weber, Parker, Poe, Adams & Bernstein, L.L.P., Charlotte, North Carolina, for Appellee.

Before LUTTIG, Circuit Judge, BUTZNER, Senior Circuit Judge, and THORNBURG, United States District Judge for the Western District of North Carolina, sitting by designation.

Affirmed in part and reversed and remanded in part by published opinion. Judge LUTTIG wrote the opinion, which Senior Judge BUTZNER and Judge THORNBURG joined.

## OPINION

LUTTIG, Circuit Judge:

This diversity suit is a dispute over insurance coverage for the insured's liability to a third party for an underground gasoline leak. We hold that under South Carolina law the insurance policy was only triggered once the gasoline reached the third-party's property and that the insurer must indemnify the insured only for the damage that occurred while the policy was in effect.

### I.

Beginning in or sometime before 1978, appellee Spartan Petroleum leased a lot in Laurens County, South Carolina, on Highway 56 near Interstate 26, for use as a service station ("Chevron property"). Spartan also owned an underground gasoline storage system there. In January 1986, Spartan discovered that this system had been leaking. The total loss of gasoline amounted to about 16,000 gallons. Spartan notified the South Carolina Department of Health and Environmental Control ("DHEC"), which ordered it "to determine the presence and probable fate of contamination (if any) to the environment." Spartan also notified its insurer, appellant Federated Mutual Insurance Company, which paid for cleanup under Spartan's coverage for first-party property damage.

Spartan in late 1986 installed monitoring wells on South Carolina's highway right-of-way across the street from the Chevron property. These revealed that the gasoline had migrated to the State's soil. Again, Federated paid for cleanup, this time under Spartan's third-party liability coverage. A

further leak, of about 6,400 gallons, occurred in June 1988.

The first-party and third-party coverage were separate sections of a policy ("Federated policy") that was in effect from January 19, 1985, to January 19, 1986, then was renewed for a year.[1] Section 1 covered first-party property damage. Section 2, which covered third-party liability, is a standard-form Comprehensive General Liability Insurance policy ("CGL"). Federated promised to

pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ...property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such ...property damage, even if any of the allegations of the suit are groundless, false or fraudulent.

...

The policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in ... property damage...." It defines "property damage" as

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting there from, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

The policy does not define "property."

In March 1990, monitoring wells that Spartan had sunk the month before at a property adjoining the Chevron property (the "Roshto property") detected gasoline contamination. As part of the DHEC-mandated cleanup of the entire area of contamination, Federated,under the third-party liability coverage, paid to cleanup the Roshto property. J.A. at 88, 296–97, 356.

Federated balked, however, when Spartan demanded that Federated defend and indem-nify Spartan against a suit that the owners of the Roshto property filed in 1994. The owners sued for damages caused by the gasoline contamination of their property, in particular lost property value, lost use and enjoyment of the property, and damage to the business of the Holiday Inn located on the property. Under South Carolina law at the time, damage did not occur until it became manifest, and the damages to the Roshto property "did not manifest during the Federated policy periods." J.A. at 116. Thus, in Federated's view, "there was no property damage during the policy periods [1985–87]," and therefore no coverage.

While Spartan's suit against Federated was pending, South Carolina law on when "property damage" occurs changed, the new rule being that coverage under a CGL policy is "triggered" when the first "injury-in-fact" occurs, regardless of when the damage becomes manifest. *Joe Harden Builders, Inc. v. Aetna Casualty and Surety Co.*,486 S.E.2d 89, 91 (S.C.1997). Federated then agreed to defend the Roshto lawsuit, but under a reservation of rights. The Roshto lawsuit settled, and Federated refused to indemnify Spartan.

The district court granted summary judgment to Spartan on both indemnification and the duty to defend. It held that under *Joe Harden* the injury to the *Chevron* property during the policy period was the injury-in-fact that triggered coverage under the policy for all damages "resulting from the leak that occurred in January 1986." Thus "the date when the contamination migrated to the Roshto property" was "irrelevant." The key date was when "*Spartan* suffered an injury-in-fact," (emphasis added), not when the Roshto property or its owners suffered an injury-in-fact.

## II.

Unlike the district court, we believe that the date when the gasoline migrated to the Roshto property is critical. We thus

---

1. Subsequent policies included absolute pollution exclusions and so are not at issue. An umbrella policy took effect when Spartan reached the lim-its of its primary policy, but the terms of this policy do not differ significantly from the primary policy.

reverse the summary judgment regarding indemnification.[2]

■ The dispositive issue is what the term "property" means for purposes of "property damage ... which occurs during the policy period," specifically, whether it means the property owned by the third-party claimant, which would require Spartan to prove when the gasoline migrated to the Roshto property, or, rather, all property harmed by a particular "occurrence," which would allow injury to the Chevron property to trigger coverage for damages to the Roshto property. Before we can apply *Joe Harden*'s requirement of an injury-in-fact to trigger coverage under an insurance policy, this question must be answered. *Joe Harden* does not answer this question, notwithstanding the opposing claims of the parties. But the policy language and caselaw from other states do. We conclude that the injury-in-fact must be to the third-party's property and thus that the gasoline contamination of the *Roshto* property must have occurred during the policy period in order for Federated to be liable. According to this understanding, the date of the gasoline leak and of the injury to the Chevron property (which are the same thing) is irrelevant.

In *Joe Harden*, the South Carolina Supreme Court answered the question of when "property damage" or "bodily injury" occurs under the standard CGL policy in cases involving progressive damages, such as latent defects, toxic spills, and asbestosis. Courts nationwide have struggled with this question, since the times of the injury-causing event (such as defective construction, a fuel leak, or exposure to asbestos), the injury itself, and the injury's discovery or manifestation can be so far apart. The *Joe Harden* court, emphasizing the policy's requirement that property damage "occur[ ] during the policy period," chose the second of these three points, but added that damage can continue over several policy periods, thus triggering more than one policy:

> [C]overage is triggered whenever the damage can be shown in fact to have first occurred, even if it is before the damage became apparent, and the policy in effect at the time of the injury-in-fact covers all the ensuing damages.
>
> . . .
>
> We hold coverage is triggered at the time of an injury-in-fact and continuously thereafter to allow coverage under all policies in effect from the time of injury-in-fact during the progressive damage.

486 S.E.2d at 91. This is the "injury-in-fact/continuous" trigger, which we will refer to simply as the "injury-in-fact" trigger.

*Joe Harden,* however, does not establish what the relevant "injury" or "damage" is when a "damage" crosses property lines, or what the relevant "property" is that must suffer an injury during the policy period. On the one hand, the case involved only a single piece of property—a cracked wall on a condominium. Thus the South Carolina Supreme Court's repeated references to "the damage" did not contemplate damage affecting multiple properties. On the other hand, in its emphasis on progressive damage, the court seemed to view damages as a single thing resulting from one underlying injury-causing event and stretching over time. This view would seem to contemplate the disregard of property lines. We find no help in the court's statement that "the policy in effect at the time of the injury-in-fact covers all the ensuing damages." 486 S.E.2d at 91. For "ensuing damages" could mean either ensuing damages to the *same* property harmed by the initial injury-in-fact or ensuing damages to *any* property harmed by the same underlying event, whether or not that property is the same parcel that the initial injury-

---

**2.** We affirm the district court, however, regarding the duty to defend. The duty to defend turns only on the allegations in the underlying complaint. If the complaint "creates a possibility of coverage ... the insurer is obligated to defend." *Isle of Palms Pest Control Co. v. Monticello,* 459 S.E.2d 318, 319 (Ct.App.S.C.1994). The complaint in the Roshto lawsuit alleged that Spartan allowed the "release of a large quantity of petroleum products ... between 1978 and 1986," that Spartan "failed to contain or clean up the contamination," and that the plaintiffs suffered damages "[a]s a proximate result of such contamination." Given these dates and these allegations, there is surely a "possibility" that the contamination reached the Roshto property in 1986.

in-fact harmed. The same ambiguity exists in the court's statement that "the injury-in-fact trigger [is] consistent with the policy's requirement that damage occur during the policy period." *Id.* Either reading of "damage" is reasonable, and we have found no South Carolina precedent resolving this question.

The policy language, however, resolves the question in Federated's favor, requiring a rule that damage to the property of the underlying claimant—the condominium owners in *Joe Harden* and the owners of the Roshto property here—must occur during the policy period. First, the policy's language regarding the duty to defend points in this direction. After obliging Federated to pay for damages because of property damage, the policy adds that Federated "shall have the right and duty to defend any suit against the insured seeking damages on account of *such* ... property damage." (emphasis added). "Such" refers to the property damage that is the subject of the underlying suit. "Property damage" therefore means "damage to the property of the underlying claimant."

Second, the well-established distinction between coverage for damage to the insured's property and coverage for damage to the property of third parties suggests that the former should not trigger the latter. South Carolina law acknowledges this distinction. *See Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 319 S.C. 12, 459 S.E.2d 318, 320 (Ct.App. S.C.1994) ("A general liability policy is intended to provide coverage for tort liability for physical damages to the property of others."). In the Federated policy, the distinction is clear from both the structure and language of the policy. Section 1, entitled "Property Coverage," covers Spartan for damages to its own properties, all specifically listed in declarations accompanying that section. Section 2, entitled "Liability Coverage," covers third-party claims. Section 2 makes explicit this distinction by excluding coverage for property damage to property owned, rented, or controlled by Spartan. This makes eminent sense: in a policy covering "liability" to a third party, it is nonsensical to say there is coverage before

any event creating liability to that third party has occurred. *See Browder v. United States Fidelity & Guaranty Co.*, 893 P.2d 132, 134 (Colo.1995) (noting "basic tenet of liability insurance that a third party must suffer actual damage within the policy period to recover under a liability policy."). Yet such a rule would result were we to hold that damage to the Chevron property may trigger coverage for damage to the Roshto property.

Finally, we note that the district court, in reaching a contrary conclusion, distorted the policy's language and in so doing suggested that an "occurrence" (here, the fuel leak on the Chevron property), rather than actual damage, triggers coverage under the third-party liability policy. While this view is understandable as to the Chevron property—because the leak and the initial injury were simultaneous—it leads to error when multiple properties are involved. The district court quoted the policy as covering Spartan for "all sums which the insured shall become legally obligated to pay as damages because of ... an occurrence." (ellipses in district court opinion). But the policy actually obliges Federated to pay for "damages because of ... *property damage to which this insurance applies,* caused by an occurrence." (emphasis added). The definition of "property damage" in turn makes clear that the insurance "applies" only to such damage as "occurs during the policy period." Only after so quoting the policy could the district court hold that "any liability Spartan has for the Roshto property damage would be a legal obligation stemming from the occurrence of the fuel leakage," such that "[w]hen the Roshto property actually became contaminated is of no concern."

Caselaw from outside South Carolina reinforces our conclusion that the determinative date under an injury-in-fact trigger such as South Carolina's is when the *claimant's property* was damaged. In *Jenoff, Inc. v. New Hampshire Ins. Co.*, 558 N.W.2d 260(Minn.1997), which the court in *Joe Harden* favorably cited, 486 S.E.2d at 90, the Minnesota Supreme Court explained that the injury-in-fact trigger looks to "the time when the complaining party was actually injured."

*Jenoff,* 558 N.W.2d at 261. *See id.* at 262–63 (same). In one of the seminal cases adopting the injury-in-fact trigger, *American Home Products Corp. v. Liberty Mutual Ins. Co.,* 565 F.Supp. 1485 (S.D.N.Y.1983), *aff'd. as modified,* 748 F.2d 760 (2d Cir.1984), the court likewise looked to the date when a "compensable injury" occurred, *id.* at 1498, thus to the date when the party seeking compensation first suffered injury. *See id.* at 1509 (explaining that injury-in-fact rule would bar indemnification for third-party liability in a case "where the insured could not prove that liability was based on an injury ... that occurred during coverage").

Although *Jenoff* involved a single property, and *American Home Products* involved bodily injuries, the rule equally holds in cases involving multiple properties. In *Garriott Crop Dusting Co.* v. *Superior Court of Kern County,* 221 Cal.App.3d 783, 270 Cal.Rptr. 678 (1990), which involved migration of soil pollutants from the insured's property to a third-party's property, the court stated the issue as "when the property now owned by [the third-party claimant] was damaged."[3] 221 Cal.App.3d at 791, 270 Cal.Rptr. 678. Because third-party coverage was at issue, the court took it as given that even though the policy did not "say to whom that property must belong ... it must not belong to the insured." *Id.* The California Court of Appeals reiterated this in a subsequent case involving migration of toxic gases, treating the key date for purposes of determining coverage as when migration to the adjacent property began. *County of San Bernardino v. Pacific Indemnity Co.,* 56 Cal.App.4th 666, 684–87, 65 Cal.Rptr.2d 657 (1997).

Cases rejecting this rule serve to prove the rule, because they reject the injury-in-fact trigger of *Joe Harden.* In *New Castle County* v. *Continental Casualty Co.,* 725 F.Supp. 800 (D.Del.1989), *aff'd. in part, rev'd. in part,*

933 F.2d 1162 (3d Cir.1991), which involved leaching of pollutants from a landfill to adjacent land, the court adopted a "continuous trigger" beginning when the "injurious process leading to the property damage" commenced, 725 F.Supp. at 812, by which it meant the date when any contaminant began leaking from the landfill. It acknowledged but rejected the injury-in-fact trigger, because "it would be impossible ... to determine when the first molecule of contaminant damaged neighboring property." *Id.* at 812. *See Harleysville Mutual Ins. Co., Inc. v. Sussex County,* 831 F.Supp. 1111, 1124 (D.Del.1993) ("[I]t is impossible to identify a precise point in time when property damage occurs from the leaching of pollutants."), *aff'd.,* 46 F.3d 1116, 1994 WL 735578 (3d Cir.1994).

Unlike these courts, we are not free to consider such policy arguments. The court in *Joe Harden* acknowledged the proof problems but found them not dispositive, because even with such problems the insured stood better off under an injury-in-fact trigger than under a manifestation trigger. *See* 486 S.E.2d at 91 & n. 2. In addition, *Joe Harden* effectively overruled *Spinx Oil Co., Inc. v. Federated Mutual Ins. Co.,* 310 S.C. 477, 427 S.E.2d 649 (S.C.1993), in which the South Carolina Supreme Court had agreed with the above objections to an injury-in-fact rule. *Id.* at 651 (adopting manifestation trigger because "[d]etermining exactly when damage begins can be difficult, if not impossible"), quoting *Mraz v. Canadian Universal Ins. Co. Ltd.,* 804 F.2d 1325, 1328 (4th Cir.1986). Finally, *Joe Harden* emphasized not policy but rather the language of the CGL, particularly the requirement that property damage occur during the policy period.

■ We thus conclude that under South Carolina law, in cases involving a standard

---

**3.** The more particular issue in *Garriott Crop Dusting* was whether the claimant must have owned the property at the time the damage first occurred. Courts have disagreed as to whether the key date is when the particular claimant suffered injury (the date it purchased the damaged land) or when the property itself suffered injury (the date the contaminant migrated to the land). Since we are aware of no change in ownership of the Roshto property, this is not relevant here. Under either rule, the date of damage to the Roshto property, rather than to the Chevron property, controls. *Compare Browder,* 893 P.2d at 134 n. 2 (rejecting view of *Garriott Crop Dusting* that date of injury to the property, rather than to claimants, controls, and applying "well-settled" rule that key time is "when the complaining party was actually damaged").

CGL policy and progressive damage affecting multiple properties, the injury-in-fact trigger requires an insured to demonstrate that during the policy period an injury, caused by the underlying "occurrence," occurred to the property that is the subject of the underlying third-party action. Once an injury-in-fact has triggered coverage as to *that* property, coverage is triggered "continuously thereafter to allow coverage under all policies in effect from the time of injury-in-fact during the progressive damage" to that property. *Joe Harden*, 486 S.E.2d at 91. Accordingly, the district court erred in combining the Chevron and Roshto properties for purposes of triggering coverage.

### III.

Federated argues that Spartan has presented no persuasive evidence that contamination reached the Roshto property prior to January 1987, when coverage under the Federated policy ended, and that we should therefore grant summary judgment to Federated. We disagree. Because both sides have offered evidence regarding the date of migration, and because this issue of fact is the central question for coverage, further proceedings will be required on a remand.

It is true that Spartan has no direct evidence of the date of migration, but this does not now justify summary judgment for Federated. Both sides have presented expert testimony, and on the record before us we cannot say that a reasonable juror could not go either way. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (stating that summary judgment is only proper where a reasonable jury could not find for the plaintiff by a preponderance of the evidence). We lack information on the experts' credentials and methodologies; the district court did not address this question at all, because it thought the date of migration irrelevant; the parties have barely briefed the issue; we have no maps of the respective properties and monitoring wells; and we lack the complete transcripts of the depositions of the two experts. While we wonder why Spartan apparently made no effort until 1990 to check for contamination of the Roshto property—simply

by installing a monitoring well at the property line—we also note that the leak had been on going for perhaps eight years before Spartan detected it in 1986, presumably ample time for migration.

We reject Federated's argument that the testimony of Spartan's expert is deficient simply because he could not pinpoint the date of migration. We highly doubt that anyone could ever, except in the rarest cases, know the exact date of migration. It is only necessary to show by a preponderance of the evidence that migration to the Roshto property occurred during the policy period. *See Sentinel Ins. Co., Ltd.* v. *First Ins. Co. of Hawaii, Ltd.*, 76 Hawai'i 277, 875 P.2d 894, 917 (1994) ("[P]roof of the actual onset of injury with precision is not necessary; all that is necessary is reasonably reliable evidence that the injury ... more likely than not occurred during a period of coverage, which usually is at least one year long.") (citation and internal quotation marks omitted; ellipses in original).

■ We also reject Federated's claim that property only suffers an "injury" when the contamination levels exceed the maximum allowed by the DHEC. Federated so claims several times in its briefs, but never cites any supporting authority in either caselaw or South Carolina statutes. We have found none, and on the contrary think that since a state tort action for property damage from contamination (like the Roshto lawsuit) does not appear to depend on violating DHEC regulations, neither does the injury-in-fact trigger for insurance coverage. *Cf. Braswell v. Faircloth*, 300 S.C. 338, 387 S.E.2d 707, 710 (S.C.App.1989) (stating that chemical spill caused "physical injury to the land," and not tying this conclusion to DHEC regulations); *Neal v. Darby*, 282 S.C. 277, 318 S.E.2d 18, 23 (S.C.App. 1984) (stating that South Carolina Hazardous Waste Management Act does not preempt state common law nuisance actions).

■ But the burden of proof is on Spartan. *See Joe Harden*, 486 S.E.2d at 91 (explaining that under an injury-in-fact trigger "an insured maybe able to prove in retrospect that damage occurred during the policy

period ..."); *Garrett v. Pilot Life Ins. Co.,* 241 S.C. 299, 128 S.E.2d 171, 173 (S.C.1962) (placing burden on insured to show that his claim falls under policy's coverage).

## IV.

■ If on remand the district court concludes that the contamination did reach the Roshto property during the period of the Federated policy, it will become necessary to allocate the costs of the Roshto settlement. The policy itself is silent on this issue. Although the parties have pointed us to no South Carolina law on the subject, and we have not found any, we follow those courts that have concluded that the injury-in-fact/continuous trigger, such as the one adopted in *Joe Harden*, requires both pro rata allocation and allocation to the insured for any periods of the progressive damage during which it was self-insured.

First, as a general matter it follows from such a trigger that an insurer is only liable for its "time on the risk." Thus, if an injury-in-fact occurs in year one, and the damage continues over three years, and if Smith Insurance covered year one while Jones Insurance covered years two and three, Smith is liable for 1/3 of the damages and Jones for 2/3, regardless of the respective policy limits. A court looks to the periods covered, not to the rate or degree of damage occurring during each period (which would involve even more difficult proof problems). This is the approach that *Joe Harden* suggests, when it explains that the injury-in-fact/continuous trigger "will allow the allocation of risk among insurers when more than one insurance policy is in effect during the progressive damage." 486 S.E.2d at 91, *citing Sentinel,* 76 Hawai'i 277, 875 P.2d 894. In *Sentinel,* the chief case on which the South Carolina Supreme Court relied throughout the *Joe Harden* opinion, the court allocated contribution "among the liable insurers in proportion to the time periods their policies covered." *Sentinel,* 875 P.2d at 919. Pro rata liability is the "logical corollary" of the injury-in-fact trigger, because that trigger hinges on the language that the CGL policy covers only "damages ... during the policy period." *Arco Indus. Corp. v. American Motorists Ins. Co.,* 232 Mich.App. 146, 1998 WL 709327 (Mich. App. Oct. 9, 1998) (page references not available). *See Northern States Power Co. v. Fidelity & Casualty Co. of New York,* 523 N.W.2d 657, 662 (Minn.1994) ("The essence of the actual injury trigger is that each insurer is held liable for only those damages which occurred during its policy period; no insurer is held liable for damages outside its policy period."). The court in *Joe Harden,* like all courts adopting the injury-in-fact trigger, relied heavily on the "damage during the policy period" language of the standard CGL policy.

Second, given the reasoning underlying the time-on-the-risk rule of liability, it follows that in any period of progressive damages during which *no* insurer was on the risk—when the insured was "self-insured"—the insured should bear the loss. To hold otherwise would be to make an insurer liable for damages that occurred when it was *not* on the risk. Thus, in *Domtar, Inc. v. Niagara Fire Ins. Co.,* 563 N.W.2d 724 (Minn.1997), the court rejected as "too narrow" the insured's argument that a previous decision of the Minnesota Supreme Court adopting both the injury-in-fact trigger and pro rata liability did not also require the insured to be liable for self-insured periods. *Id.* at 732. The applicability of the prior opinion to periods of self-insurance was "clear enough," the court thought, given the rule it had laid down there that "[e]ach insurer is liable [only] for that period of time it was on the risk." *Id.* The "all sums" language in the CGL policy is not to the contrary, when read in context. *See Outboard Marine Corp. v. Liberty Mut. Ins. Co.,* 283 Ill.App.3d 630, 219 Ill.Dec. 62, 670 N.E.2d 740, 749–50 (1996) (stating that allocating damages to the insurer for the period during which it had no insurance "is the only fair approach. While the insurers agreed to indemnify OMC for 'all sums,' it had to be for sums incurred during the policy period.").

■ If on remand the trial court determines that contamination was on the Roshto property between January 19, 1985, and January 19, 1987, the Federated policy is triggered. (If the contamination did not reach the property until after January 19, 1986,

only one of the two policies would be triggered.) Federated's liability would be a proportion of the Roshto settlement equal to the period the Federated policy or policies covered, divided by the total period of damages. The period of damages runs from the injury-in-fact—the time the contamination migrated onto the Roshto property— "until the damage [was] complete," *Joe Harden,* 486 S.E.2d at 91. *See id.* (triggering period runs "from the time of injury-in-fact during the progressive damage"). We take the time the damage was "complete" to be the time it was discovered, which in this case is 1990.

### CONCLUSION

Accordingly, we affirm the judgment of the district court as to Federated's duty to defend Spartan in the Roshto lawsuit but reverse as to Federated's duty to indemnify Spartan for the Roshto settlement. On the latter issue, we remand for the district court to determine when the contamination reached the Roshto property and, if appropriate, to allocate a pro rata share of liability to Federated, with Spartan bearing the loss for any self-insured periods.

*AFFIRMED IN PART; REVERSED AND REMANDED IN PART.*