**AUTO–OWNERS INSURANCE CO., INC., Plaintiff,**

v.

**ZURICH US, Defendant.**

**C.A. No. 2:03–1437.**

United States District Court, D. South Carolina, Charleston Division.

May 4, 2004.

John Lucius McCants, David C. Slough, Ellis Lawhorne and Sims, Columbia, SC, for Plaintiff.

Timothy A. Domin, Clawson and Staubes, Charleston, SC, for Defendant.

## ORDER

DUFFY, District Judge.

This matter is before the court upon the parties' cross motions for summary judgment. For the reasons stated herein, Defendant Zurich's Motion for Summary Judgment is granted, and Plaintiff Auto Owners Insurance Company's ("Auto Owners") Cross Motion for Summary Judgment is denied.

## I. BACKGROUND

This declaratory judgment action arises from insurance policies issued by Plaintiff and Defendant to a third party home construction company, J.D. Smith Company, Inc. ("J.D.Smith"). Plaintiff Auto Owners issued a commercial general liability policy to J.D. Smith from October 27, 1996 to October 27, 2000.[1] (Comp.¶ 4). Defendant Zurich U.S. ("Zurich")[2] had issued an insurance policy with this same commercial general liability coverage to J.D. Smith

covering the prior year, i.e. from October 27, 1995 to October 27, 1996. (Comp.¶ 5).

J.D. Smith entered a contract with Robert and Beth Goldstein for the construction of a home in Hollywood, South Carolina,[3] and completed construction of the home on July 26, 1996. (Comp.¶ 6, 8). The Goldsteins subsequently filed a state court action against J.D. Smith alleging defects with the design and manufacture of their residence. The parties submitted the action to binding arbitration, and the arbitrator awarded the Goldsteins $179, 134.56, but Auto Owners and Zurich settled with the Goldsteins for $155,000. The two insurance carriers agreed to divide the payment to the Goldsteins as follows: Auto Owners would pay $148,800 and Zurich would pay $6,200. (Comp.¶ 15). The agreement between the insurers stipulated that progressive damages began at the time of the completion of the home, July 26, 1996, and ended at the time of the arbitrator's award on April 29, 2002.[4] Additionally, the insurers reserved the right to seek declaratory relief. *Id.*

Auto Owners now seeks a declaration from this court that it is only responsible for one-half of J.D. Smith's portion of the settlement during the period from October 27, 1996–October 27, 2000, and that Zurich is responsible for the other half of that amount. (Comp.¶ 19). Further, Auto Owners asks this court to declare that Zurich is responsible for the entire portion

---

1. The policy was initially issued for a one year period, but was subsequently renewed three times.

2. Apparently, the policies were actually issued by Assurance Company of America and not Zurich USA. Zurich USA is "merely a trade style that has been employed by Assurance Company of America." (Def. Mot. at 1, n. 1). For purposes of this order, the court considers Zurich USA a proper party Defendant and refers to the Defendant as "Zurich" throughout.

3. The parties do not reveal the date on which this contract was entered, but it is of little relevance. As discussed more fully below, the contract was completed three months before Zurich's policy expired and Auto Owners coverage began.

4. The insurance contract issued by Zurich was only in effect for the first three months of this period, while the insurance contract issued by Auto Owners was in effect for the remaining seventy-two months of this period.

of the settlement rendered against J.D. Smith during the period when only Zurich's policy was in effect (i.e., October 27, 1995–October 27, 1996). *Id.* Essentially, Auto Owners asks the court to declare (1) that Zurich must pay a 50% contribution for the time that only Auto Owners' policy was in effect-October 27, 1996 to October 27, 2000, and (2) that Zurich must pay 100% of the settlement resulting from damage caused between October 27, 1995–October 27, 1996, when only Zurich's policy was in effect. Alternatively, Auto Owners asks the court to split the whole settlement amount equally between the two insurers so that each must indemnify J.D. Smith for one half of the settlement amount.

Defendant Zurich seeks summary judgment on the grounds that it has already paid the pro rata amount of indemnification for the periods when its policy was in effect. Plaintiff Auto Owners has filed a cross motion for summary judgment, seeking a declaration from this court that the amounts sought in its complaint are warranted.[5]

## II.  *ANALYSIS*

### A.  Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to

find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole,* 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548.

### B.  Both Insurers' Obligation to Indemnify J.D. Smith

Under *Joe Harden Builders, Inc. v. Aetna Cas. & Sur. Co.,* 326 S.C. 231, 486 S.E.2d 89 (1997), both insurance companies are responsible for indemnifying J.D. Smith. In that case, the South Carolina Supreme Court adopted a "trigger theory" for determining when coverage is triggered under a standard commercial general liability insurance policy. "Under this theory, coverage is triggered whenever the damage can be shown in fact to have first occurred, even if it is before the damage became apparent, and the policy in effect at the time of the injury-in-fact covers all the ensuing damages." 486 S.E.2d at 91.

---

**5.** Both parties request that the court decide this case on summary judgment without further discovery. The parties agree that the present matter is a pure question of law for the court to resolve.

Coverage is also triggered under every policy applicable thereafter. *See Spartan Petroleum, Co. v. Federated Mutual Ins. Co.*, 162 F.3d 805 (4th Cir.1998) (stating that under South Carolina law, liability is triggered when the injury to the property itself occurs and "can continue over several policy periods, thus triggering more than one policy"); *Joe Harden*, 486 S.E.2d at 91 (noting that "coverage is triggered at the time of an injury-in-fact and continuously thereafter to allow coverage under all policies in effect from the time of injury-in fact during the progressive damage"). As the *Joe Harden* court reasoned, "this theory of coverage will allow the allocation of risk among insurers when more than one insurance policy is in effect during the progressive damage." 486 S.E.2d at 91.

██ The rule of *Joe Harden* requires the court to reject Auto Owners' argument that it is not responsible for any indemnity for injury caused between October 27, 1995–October 27, 1996, when only Zurich's policy was in effect.[6] The parties stipulated that injury continued to occur well into the period when Auto Owners' policy was effective. "*Joe Harden* does not contain language even suggesting that the trigger period for coverage under a commercial general liability policy ends upon discovery of the property damage rather than continuing as long as the progressive damage continues to occur." *Stonehenge Engineering Corp. v. Employers Ins. of Wausau*, 201 F.3d 296, 304 (4th Cir.2000). Thus, *Joe Harden* requires that both Plaintiff and Defendant be responsible for indemnifying J.D. Smith in some amount as the injury began during Zurich's coverage period, but continued through Auto Owners' coverage period.[7]

## C. Method of Allocating Indemnity Between the Successive Insurers

Zurich does not contest that it must indemnify J.D. Smith for some portion of the damages assessed against it. Instead, Zurich disputes that it must pay fifty percent of the indemnity for the period when only Auto Owners' policy was in effect, and instead suggests that a pro rata allocation of indemnity is appropriate.

██ The Fourth Circuit seems to have definitely spoken to the proper method of allocation of indemnity between successive insurers. In *Spartan Petroleum*, the Fourth Circuit stated that the proper method for allocating damages would be a "portion of the ... settlement equal to the period the [insurer's] policy or policies covered, divided by the total period of damages." 162 F.3d at 813. The South Car-

---

6. The court also notes the irony in Auto Owners' argument—on the one hand, Auto Owners asks the court to declare that Zurich is responsible for indemnifying 100% of the damage incurred while only Zurich's policy was in effect, but on the other hand, Auto Owners seeks 50% contribution from Zurich for a period when only Auto Owners' policy was in effect.

7. Plaintiff Auto Owners' reliance on *Century Indemnity Co. v. Golden Hills Builders, Inc.*, 348 S.C. 559, 561 S.E.2d 355, 357 (2002) is misplaced. Plaintiff apparently contends that *Century Indemnity* "imposes an obligation on Zurich to indemnify the Insured for ensuing damages even though Zurich only insured the Insured for the first three months of the pro-

gressive property damages period." (Pl. Mem. at 7). Plaintiff suggests that "the insured could have demanded Zurich pay the entire award without regard to Auto Owners." *Id.* The court does not read *Century Indemnity* to allow such a result. The *Century Indemnity* court first references *Joe Harden's* rule that coverage is triggered when the damage first occurs, but then states that "[c]overage is also triggered under every policy applicable thereafter." 561 S.E.2d at 357. Under that reasoning, both insurers are responsible for indemnity in the present case. The court need not address other reasons that *Century Indemnity* might also be distinguishable, namely that the case did not even address the apportionment of indemnity between successive insurers.

olina Supreme Court has also implicitly approved such an approach. In *Joe Harden,* the court stated that apportioning liability among multiple insurers would allow allocation of the risk between different entities, and cited approvingly to *Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawaii, Ltd.,* 76 Hawai'i 277, 875 P.2d 894 (Hawai'i 1994).[8] In *Sentinel,* the Hawaii Supreme Court adopted a pro rata approach to allocating liability among successive insurers, reasoning that "[e]quity ... dictates that the court allocate contribution among the liable insurers in proportion to the time periods their policies covered." 875 P.2d at 919. The court calculated each insurer's pro rata share by determining how many months each insurer's policy was in effect during the trigger period, and dividing that number of months by the total length of the trigger period. *Id.* at 919 nn. 20, 21, 875 P.2d 894; *see also Scottsdale Ins. Co. v. American Empire Surplus Lines Ins. Co.,* 811 F.Supp. 210, 217 (D.Md.1993) ("While an equal apportionment rule would be easier to apply, it would be entirely inequitable in cases where one insurer had provided coverage during almost the entire period during which damage from exposure had occurred while another insurer had provided coverage only for a brief moment during that period."). Accordingly, the court must apply a pro rata approach to determining Auto Owners and Zurich's respective liabilities.[9]

Here, the total time period of injury-in-fact is seventy-five months, i.e. the period from July 26, 1996, when the date of certificate of occupancy was issued, to April 29, 2002, the date of the arbitration award.[10] Of those seventy-five months, Zurich's policy was in effect for only three months, meaning that Zurich is responsible for 3/75 of $155,000. Thus, Zurich must contribute $6,200.[11] Based on this approach, Auto Owners is responsible for 72/75 of $155,00.

## III. CONCLUSION

It is therefore **DECLARED,** for the foregoing reasons, that Defendant Zurich's Motion for Summary Judgment is **GRANTED.** It is further **DECLARED** that Defendant Zurich must indemnify J.D. Smith in the amount of $6,200 while Plaintiff Auto Owners must indemnify J.D. Smith in the amount of $148,800. It is further **DECLARED** that Plaintiff Auto Owner's Cross Motion for Summary Judgment is **DENIED.**

**AND IT IS SO ORDERED.**

---

8. Notably, the Fourth Circuit also cited approvingly to *Sentinel* in *Spartan Petroleum. See, Spartan Petroleum,* 162 F.3d at 812.

9. Notably, this is the same method of calculating the allocation of the settlement amount proposed by Auto Owners in a letter to Zurich. *See* Comp., Ex. A. ("For the sake of moving forward, I propose that we settle based on the Time on Risk method."). The court remains puzzled as to why Plaintiff pro-

posed that approach and now contests the same in this action.

10. The parties stipulated that this would be the relevant injury-in-fact period, and the court bases its calculation upon that stipulation. *See* Comp, Ex. A; Def. Ex. 3.

11. To the extent that this amount has already been paid by Defendant Zurich, the court imposes no additional duty on Defendant.