THIS OPINION HAS
 NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Supreme Court

 
 
 
Liberty Mutual
 Fire Insurance Company and Employers Insurance of Wausau, a Mutual Company, Plaintiffs,
v.
J.T. Walker
 Industries, Inc., f/k/a Metal Industries, Inc.; and MI Windows & Doors,
 Inc., f/k/a MI Home Products, Inc. and Metal Industries, Inc. of California, Defendants.
 
 
 

CERTIFIED QUESTION

ON CERTIFICATION FROM THE UNITED STATES
 DISTRICT COURT FOR SOUTH CAROLINA
Margaret B. Seymour, United States District
 Judge

Memorandum Opinion No. 2011-MO-022
Heard January 6, 2011  Filed August 22,
 2011

CERTIFIED QUESTION ANSWERED

 
 
 
Morgan
 S. Templeton, of Charleston, and J. Mark Langdon, of Elmore & Wall, of
 Raleigh, North Carolina, for Plaintiffs.
Wm.
 Howell Morrison and Phyllis W. Ewing, of Moore & Van Allen, PLLC, of
 Charleston, for Defendants.
C.
 Mitchell Brown, of Nelson Mullins Riley & Scarborough, LLP, of Columbia,
 for Amicus Curiae the Property & Casualty Insurers Association of America.
 
 
 

 PER
 CURIAM:  We certified the following question from the United States
 District Court for the District of South Carolina:

Under
 South Carolina law, when multiple commercial general liability policies are
 triggered pursuant to Joe Harden Builders, Inc. v. Aetna Casualty &
 Surety Co., 486 S.E.2d 89 (S.C. 1997), and an insurer is able to allocate
 indemnity costs to another subsequent insurer, is the insured entitled to
 prorate the various deductibles in proportion to the allocation of indemnity
 costs among the triggered policies?

We
 answer the certified question "no," finding Defendants/policyholders
 were not entitled to prorate their deductibles based on the limited record
 before us.  Our answer to this certified question is a narrow one, for we view
 the district court's grant of partial summary judgment as binding on this
 Court.  Moreover, subsequent to our acceptance of this certified question, we overruled
 our decision in Century Indemnity Co. v. Golden Hills Builders, Inc.,
 348 S.C. 559, 561 S.E.2d 355 (2002).  See Crossmann Communities of
 N.C., Inc. v. Harleysville Mutual Ins. Co., Op. No. 26909 (S.C. Sup. Ct. re-filed August 22, 2011).  Nevertheless,
 given our practice to accept certified questions pursuant to Rule 244, SCACR,
 we proceed to answer the question based on the limited record before us.
I.
 Plaintiffs Liberty
 Mutual Fire Insurance Company and Employers Insurance of Wausau (collectively, "Liberty
 Mutual") issued commercial general liability insurance policies to
 Defendant J.T. Walker Industries, Inc. ("Walker") covering the period
 between May 1, 1997 and July 1, 2003.[1]  Defendant MI Windows
 & Doors ("MI"), a subsidiary of Walker, was a named insured. 
 These policies offered liability coverage for property damage up to $1,000,000
 per occurrence, with a deductible of $500,000 per occurrence.  Under the policies,
 MI would reimburse Liberty Mutual for its defense and indemnity costs up to
 $500,000, and Liberty Mutual would be responsible for the remainder of the
 defense costs and for indemnifying MI up to $1 million.  Beginning in July
 2003, Walker/MI obtained commercial general liability insurance policies from a
 different insurer, Zurich North America ("Zurich").
 From 2002 to 2008,
 five homeowners' associations commenced actions in South Carolina state courts
 alleging certain products manufactured by MI and installed in their homes were
 defective and that these defective products allowed water to intrude into the
 homes, causing progressive property damage.  Liberty Mutual defended MI in these
 lawsuits, under a reservation of rights.  All five lawsuits were settled over
 MI's objection.
 The lawsuit at
 issue hereMarais Property Owner's Association v. Beach Marais, LLC, et al.settled
 for $500,000.  While the parties dispute the precise amount of the defense
 costs (and we are unable to resolve this dispute), the various amounts asserted
 fall between $390,000 and $435,000.  Liberty Mutual and Zurich agreed among
 themselves to split the defense costs equally and to allocate the
 responsibility for indemnity payments as follows: 42% ($210,000) to be paid by
 Liberty Mutual and 58% ($290,000) to be paid by Zurich.  This allocation was
 based on each insurer's "time on risk."
 MI claims to have
 reimbursed Zurich for $310,208 in defense and indemnity costs.  In addition, MI
 claims to have reimbursed Liberty Mutual for $193,859.25 in defense costs.  Liberty
 Mutual, on the other hand, contends MI "has not reimbursed Liberty Mutual
 for any defense costs or indemnity payments made to settle the Marais action."
 Liberty Mutual
 brought an action in the United States District Court for the District of South
 Carolina seeking a declaration of its rights and obligations with regard to the
 defense and settlement of the state court lawsuits.  Following cross-motions
 for partial summary judgment, the district court entered an order finding that
 the Liberty Mutual policy "covers the full settlement . . . as do all
 other policies covering the risk during the progressive damages period":

[U]nder
 South Carolina law, the Liberty Mutual policy in effect at the time of the
 injury-in-fact covers the full settlement of each underlying claim, as do all
 other policies covering the risk during the progressive damages period, see Century Indem. Co. v. Golden Hills Builders, Inc., 561 S.E.2d 355, 357
 (S.C. 2002); Joe Harden Builders Inc. v. Aetna Cas. & Sur. Co., 486
 S.E.2d 89, 91 (S.C. 1997); [and] Liberty Mutual has a right to seek allocation
 of payments from other insurers, pro rata, based upon the length of time the
 risk was covered, see Joe Harden, 486 S.E.2d at 91 . . . .

The district court then asked
 this Court to determine whether MI was "entitled to prorate the various
 deductibles in proportion to the allocation of indemnity costs among the triggered
 policies."

II.
 It appears to us
 that the district court's order on partial summary judgment determined Liberty
 Mutual was required to indemnify MI in full.  Proceeding on that premise alone,
 we are constrained to answer the certified question "no."  If MI was
 entitled to full indemnity from a single insurer, no subsequent agreement among
 Liberty Mutual and Zurich could impair that right.  Neither Liberty Mutual nor
 Zurich was entitled to charge back any portion of the indemnified loss against
 MI.  See Joseph P. Thacker & Richard S. Walinski, Allocation
 in All-Sums Jurisdictions: Can Insurers Collect from Policyholders?, Coverage,
 July/August 2007, at 1, 15-16 (explaining that in a jurisdiction where each
 insurer triggered by a progressive injury is responsible for indemnifying its
 policyholder in full, a policyholder is "out of the mix once it has been
 indemnified" and its insurers may not "charge back to the
 policyholder" any portion of the amount they might subsequently pay to one
 another).  Accordingly, assuming Liberty Mutual was required to indemnify MI in
 full, MI was required to pay one full deductible to Liberty Mutual in exchange
 for full indemnity, and MI could not prorate that single deductible.[2]
 If it is true that
 MI has already paid over $300,000 to Zurich and over $190,000 to Liberty
 Mutual, it may seem harsh to require MI to pay Liberty Mutual the remainder of
 its $500,000 deductible.  However, the record before us is incomplete and the parties
 dispute whether these payments were actually made.  Factual issues of this kind
 are beyond the scope of the certified 

question with which we are
 presented.  If additional action is necessary in order to make MI whole, we
 trust those matters will be addressed to the district court.

III.
We are
 constrained to answer the certified question "no" because, pursuant
 to the district court's order, MI was entitled to receive full indemnity from
 Liberty Mutual.  Proceeding on that premise, MI's insurers could not charge
 back any portion of the indemnified loss against MI once MI paid its full
 deductible to Liberty Mutual.  Given the limited record before us, and the
 seemingly binding effect of the partial grant of summary judgment, MI need not
 pay more than one deductible.  Consequently, there is no need for deductible
 proration.
 CERTIFIED
 QUESTION ANSWERED.
TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.

[1]  The policy documents suggest there might
 have been a gap in coverage from May to July 1999.  No issue with regard to any
 gap in coverage is before this Court.
[2]  The district court's determination that
 Liberty Mutual was required to indemnify MI in full appears to have rested on
 its interpretation of the principles set forth in Joe Harden Builders, Inc.
 v. Aetna Casualty & Surety Co., 326 S.C. 231, 486 S.E.2d 89 (1997), and Century Indemnity Co. v. Golden Hills Builders, Inc., 348 S.C. 559, 561
 S.E.2d 355 (2002).  Our recent decision in Crossmann Communities of North
 Carolina, Inc. v. Harleysville Mutual Insurance Co. overruled Century
 Indemnity and clarified the analysis in Joe Harden.  We express no
 opinion regarding the effect of the Crossmann decision on the rights and
 obligations of the parties in this case, leaving such matters to the district
 court in the first instance.