561 S.E.2d 355

CENTURY INDEMNITY COMPANY, as successor to CCI
Insurance Company, as successor to Insurance
Company of North America, Respondent,

v.

GOLDEN HILLS BUILDERS, INC., Peter
O. Stoltz, and Brooke M. Stoltz,

of whom Peter O. Stoltz and Brooke M. Stoltz are Appellants.

No. 25426.

Supreme Court of South Carolina.

Heard Jan. 23, 2002.
Decided March 11, 2002.

Richard R. Gleissner, of Finkel & Altman, of Columbia, for appellants.

J.R. Murphy and Anthony W. Livoti, both of Murphy & Grantland, of Columbia, for respondent.

Andrea C. Pope, of Barnes, Alford, Stork & Johnson, of Columbia, for Amicus Curiae Insurance Environmental Litigation Association.

Justice MOORE:

We accepted the following questions certified by the United States Fourth Circuit Court of Appeals:

1. Does a standard commercial general liability insurance policy that explicitly provides coverage only for property damage occurring during the policy period provide coverage for continuing damage that begins during the policy period?

2. If so, is coverage precluded by a provision excluding coverage for damage to property that is owned, rented, or occupied by the insured, where the insured held legal title to the property, which was under contract for sale, when the damage began?

3. If not, is a general contractor's claim for the cost of repair to the substrate and framing of a house that was damaged by a subcontractor's improper installation of a stucco exterior precluded by a faulty workmanship exclusion?

4. If the coverage is precluded by the faulty workmanship provision, is that coverage restored by a provision that provides coverage for damage arising from products-completed operations hazards?

## FACTS

The appellants, Peter and Brooke Stoltz (hereinafter referred to as Homeowners), filed an action in South Carolina state court against Golden Hills Builders (Insured), a general contractor engaged in the business of constructing residential homes. Homeowners alleged their home was defective because a subcontractor of Insured constructed the synthetic stucco exterior of their home in a manner that caused moisture damage to the properly constructed substrate and framing of the home.

Insured began building the home in 1989 and substantially completed it by mid-1990. On June 28, 1990, Insured entered into a contract for completion of the house with Homeowners. Insured's commercial general liability insurance policy had an effective date of December 7, 1989, to December 7, 1990. The residence was deeded to Homeowners on February 22, 1991. Homeowners began noticing problems in 1998; however, the parties stipulate that the moisture damage began occurring prior to December 7, 1990, and that the damage has been continuous since that time.

Homeowners sought damages incurred in replacing the defective exterior and repairing the substrate and framing. They also sought attorney's fees and punitive damages.

Respondent, Century Indemnity Company (Insurer),[1] filed an action in the United States District Court for the District of South Carolina against Insured and Homeowners. Insurer sought a declaratory judgment that any damages awarded in the state court action would not be covered by a standard commercial general liability policy that Insurer had issued to Insured. The District Court granted Insurer's motion for summary judgment, finding coverage did not exist for the cost of replacing the synthetic stucco exterior or for repairing the damage to the substrate.

---

1. A predecessor of Insurer sold the policy to Insured.

Insured did not appeal the District Court's ruling. Homeowners, however, appealed to the Fourth Circuit Court of Appeals the portion of the decision that addressed the lack of coverage for the substrate damage.

## CERTIFIED QUESTION 1

Does a standard commercial general liability insurance policy that explicitly provides coverage only for property damage occurring during the policy period provide coverage for continuing damage that begins during the policy period?

## DISCUSSION

The insurance policy at issue in the instant case states:

We will pay those sums that the insured becomes legally obligated to pay as damages because of ... "property damage" to which this insurance applies.

The policy further states:

This insurance applies to ... "property damage" only if: (1) the ... "property damage" is caused by an "occurrence" that takes place in the "coverage territory" and (2) the ... "property damage" occurs during the policy period.

"Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." This case, as stipulated, involves the "repeated exposure to substantially the same general harmful conditions." Moisture penetrates past the synthetic stucco of the home, becomes trapped, and then damages the wooden substrate and framing of the home. This repeated exposure began during the policy period.

In the policy, "property damage" is defined as a:

Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; ...

Accordingly, property damage relates back in time to the time of the occurrence, that is, when the first injury occurred to the property.

The parties have stipulated that the home in question was within the "coverage territory," that "property damage" was

caused by an "occurrence," and that "property damage" occurred during the policy period.

The issue is whether the policy should cover (1) only the amount of property damage that occurred during the policy period, *i.e.*, between December 7, 1989, and December 7, 1990; or (2) *all* sums Insured becomes legally obligated to pay if property damage occurs during the policy period.

We believe this issue can be resolved solely by reference to *Joe Harden Builders, Inc. v. Aetna Cas. & Sur. Co.*, 326 S.C. 231, 486 S.E.2d 89 (1997).[2] In *Joe Harden*, the Court adopted a modified continuous trigger theory for determining when coverage is triggered under a standard occurrence policy. "Under this theory, coverage is triggered whenever the damage can be shown in fact to have first occurred, even if it is before the damage became apparent, and the policy in effect at the time of the injury-in-fact covers all the ensuing damages." *Id.* at 236, 486 S.E.2d at 91. Coverage is also triggered under every policy applicable thereafter.

Because the policy at issue here contains substantially the same language as the policy at issue in *Joe Harden*, the modified continuous trigger theory applies in the instant case. As a result, the insurance policy provides coverage for property damage that occurred during the policy period *and* for any continuing damage.

Therefore, the answer to the certified question of whether the policy provides coverage for continuing damage that began during the policy period is yes.

---

**2.** In *Joe Harden*, a condominium owner sought damages from Contractor for the cracking of the building's exterior brick wall. The Contractor's subcontractor had misaligned the building's concrete columns and floor slabs which caused the masonry contractor to modify the construction of the exterior brick wall. This wall began to crack because it was not intended for structural support.

Contractor settled with the owner, won an arbitration award against the subcontractor, and then sought payment from the insurer under the subcontractor's insurance policy. Contractor brought a declaratory judgment action in the United States District Court to determine coverage under the insurance policy. The Court accepted the District Court's certification of a question that concerned the issue of coverage under an occurrence policy when there is progressive damage that is not apparent at the time of the underlying injury-causing event.

## CERTIFIED QUESTION 3[3]

Is a general contractor's claim for the cost of repair to the substrate and framing of a house that was damaged by a subcontractor's improper installation of a stucco exterior precluded by a faulty workmanship exclusion?

## DISCUSSION

■ Insured was the general contractor of the home that Homeowners purchased. The defective stucco exterior was constructed by a subcontractor of Insured.

The policy excludes from coverage property damage to:

That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

(hereinafter referred to as the faulty workmanship provision). "Your work" is defined as "[w]ork or operations performed by you or on your behalf and ... materials, parts or equipment furnished in connection with such work or operations."

■ Insurance policies are subject to the general rules of contract construction. *B.L.G. Enterprises, Inc. v. First Financial Ins. Co.*, 334 S.C. 529, 514 S.E.2d 327 (1999). The Court must give policy language its plain, ordinary, and popular meaning. *Id.* When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used. *Id.* Furthermore, exclusions in an insurance policy are always construed most strongly against the insurer. *Boggs v. Aetna Cas. and Sur. Co.*, 272 S.C. 460, 252 S.E.2d 565 (1979).

■■ A comprehensive general liability policy, such as the one at issue, provides coverage "for all the risks of legal liability encountered by a business entity," with coverage excluded for certain specific risks. Rowland H. Long, LL.M., *The Law of Liability Insurance*, § 3.06[1] (2001). This type of insurance "is not intended to insure business risks, *i.e.*, risks that are the normal, frequent, or predictable consequences of doing business, and which business management

---

3. Given that the outcome of Certified Questions 3 and 4 is dispositive of the case, we decline to answer Certified Question 2.

can and should control or manage." *Id.* § 10.01[1]. Specifically, "[t]he policies do not insure [an insured's] work itself, but rather, they generally insure consequential risks that stem from that work." *Id. See also Isle of Palms Pest Control Co. v. Monticello Ins. Co.,* 319 S.C. 12, 459 S.E.2d 318 (Ct.App. 1995), *aff'd,* 321 S.C. 310, 468 S.E.2d 304 (1996) (general liability policy is intended to provide coverage for tort liability for physical damage to property of others; it is not intended to provide coverage for insured's contractual liability which causes economic losses); *Sapp v. State Farm Fire & Cas. Co.,* 226 Ga.App. 200, 486 S.E.2d 71, 75 (1997) (noting risk intended to be insured is possibility that work of insured, once completed, will cause bodily injury or *damage to property other than to completed work itself,* and for which insured may be found liable; coverage applicable under CGL policy is for tort liability for injury to persons and damage to *other* property and not for contractual liability of insured for economic loss because completed work is not that for which the damaged person bargained).

Homeowners argue that the provision, which excludes from coverage property damage to "[t]hat particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it," should be interpreted to mean that only the work that was incorrectly performed (the exterior stucco) is excluded and repairs to other parts of the property where the work was correctly performed (the substrate and substructure) are not excluded. Because the substrate and substructure were correctly constructed but were damaged by the improperly installed stucco, Homeowners argue that repairs to the substrate and substructure are not barred by the exclusion because the work was not "incorrectly performed on" those parts.

However, given the purpose of CGL policies as pointed out above, Homeowners' argument cannot be sustained. Based on the law of this State, coverage for the repair and/or replacement of the substrate and substructure of the home is excluded by the faulty workmanship provision. *See Engineered Prods., Inc. v. Aetna Cas. & Sur. Co.,* 295 S.C. 375, 368 S.E.2d 674 (Ct.App.1988) (under policy excluding coverage of insured's liability for damages resulting from restoration, repair, or replacement of its own defective work, insurer had *no duty*

*to defend* its insured in action seeking compensation for replacement of rack system lost in storm, *where losses were result of faulty workmanship by insured's subcontractor who failed to anchor system properly*); *C.D. Walters Constr. Co., Inc. v. Fireman's Ins. Co. of Newark, New Jersey,* 281 S.C. 593, 316 S.E.2d 709 (Ct.App.1984) (CGL insurer is not obligated to defend insured where action against insured did not involve accidental injury to *property other than that on which insured was performing its work*). *See also Bituminous Cas. Corp. v. Northern Ins. Co. of New York,* 249 Ga.App. 532, 548 S.E.2d 495 (2001) (faulty workmanship provision of CGL insurance policy excluded coverage for water damage sustained by owners' unfinished residence as result of contractor's alleged negligence in building deck; also rejected argument that coverage not excluded because negligence caused damage to "other property," that is, other parts of project other than those on which contractor worked).

Accordingly, the answer to the question of whether coverage is excluded by the faulty workmanship provision is yes.

## CERTIFIED QUESTION 4

If the coverage is precluded by the faulty workmanship provision, is that coverage restored by a provision that provides coverage for damage arising from products-completed operations hazards?

## DISCUSSION

■ The policy provides that the faulty workmanship exclusion does not apply to "property damage" included in the "products-completed operations hazard" provision. This provision states:

11. a. "Products-completed operations hazard" includes all ... "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

. . .

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Under this provision, the products-completed operations hazard does not include "property damage" which arose out of Insured's products that were still in Insured's physical possession, as was the case here because Insured still had physical possession of the home. *B.L.G. Enterprises, Inc., supra* (when contract is unambiguous, clear, and explicit, it must be construed according to terms parties have used).

▇▇▇ Further, the products-completed operations hazard does not include "property damage" which arose out of Insured's work that had not yet been completed.[4] The work had clearly not been completed at the end of the policy period. In June 1990, Homeowners entered into a contract for completion of the home with Insured. Upon completion, Homeowners were deeded the property in February 1991, two months after the insurance policy period had ended. Further, the work that was done as of December 7, 1990, the end of the policy period, had not been put to its intended use by Homeowners. The intended use was residing in the home which did not occur until February 1991. Therefore, Insured's work was not completed at the end of the policy period.[5]

As a result, the products-completed operations hazard provision does not restore coverage.

---

4. *See Laidlaw Envtl. Servs. (TOC), Inc. v. Aetna Cas. & Sur. Co. of Illinois,* 338 S.C. 43, 524 S.E.2d 847 (Ct.App.1999) (By plain meaning, products-completed operations coverage applies when insured contractor completes work on a project; "Accordingly, '[w]ork that has not yet been completed' is still in progress and not covered under the products-completed coverage.").

5. Homeowners argue that the language should be interpreted to mean that upon the completion of each *activity,* coverage would be extended to that activity. For example, once the plumbing was completed, coverage would be extended to that part that had been completed, *i.e.,* the plumbing. However, the plain language of the policy contradicts such an interpretation. The policy provision clearly states, "When *all* of the work called for in your contract has been completed." (Emphasis added). Further, the language of the provision 11.b.(3) clearly

## CONCLUSION

We therefore answer the certified questions in the following manner: (1) a standard commercial general liability policy provides coverage for continuing damage that began during the policy period; (2) coverage is excluded by the faulty workmanship provision; and (3) coverage is not restored by the products-completed operations hazard provision. Given our conclusion that coverage is excluded by the faulty workmanship provision, we refrain from addressing Certified Question 2.

**QUESTIONS ANSWERED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.

---

contradicts such an interpretation ("When that part of the work done at a job site has been put to its intended use by any person or organization *other than another contractor or subcontractor* working on the same project" (Emphasis added)).