586 S.E.2d 108

**Mary Louise SLOAN, Individually and as Class Representative on Behalf of All Others Similarly Situated, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF PUBLIC SAFETY and Image Data, LLC, Defendants,**

**of whom Image Data, LLC, is, Respondent.**

No. 25689.

Supreme Court of South Carolina.

Submitted June 25, 2003.

Decided Aug. 4, 2003.

---

322

Carl F. Muller, Wallace K. Lightsey, and John C. Moylan, of Wyche, Burgess, Freeman & Parham, P.A., of Greenville, for appellant.

Joseph E. Major, Kurt M. Rozelsky, and Paul E. Hammack, of Leatherwood, Walker, Todd, & Mann, P.C., of Greenville, for respondent.

PER CURIAM:

Appellant Mary Louise Sloan brought this action against the South Carolina Department of Public Safety (DPS) and Respondent Image Data, LLC (Image Data) alleging invasion of privacy by misappropriation of personality and seeking damages, injunctive, and declaratory relief. In separate orders, the trial judge granted summary judgment to DPS and Image Data. Sloan appeals the order granting summary judgment to Image Data.

## BACKGROUND

In 1997, the General Assembly passed Act No. 155, 34.15, 1997 S.C. Acts 1445 (the 1997 Act), providing:

(DPS: Sale of Photos or Digitized Images) The Department of Public Safety may enter into contracts to provide copies of photography, electronically stored information, stored photographs or digitized images. Such items are to be used for the prevention of fraud, including but not limited to, use in mechanisms intended to prevent the fraudulent use of credit cards, debit cards or other forms of financial or voter transactions. The use of such photographs, electronically stored or digitized images obtained by private companies or other entities is limited to the verification of the identity of the holder. Funds derived from the contractual sale of these copies are retained by the Department of Public Safety to defray the costs of providing same.[1]

[1]. The following year, the General Assembly passed an identical provision. Act No. 419, § 36.12, 1998 S.C. Acts 2912.

On January 30, 1998, DPS and Image Data entered a "Data Access Agreement." Under the terms of this agreement, DPS agreed to make available to Image Data the information and photograph appearing on the face of South Carolina drivers' licenses and state-issued personal identification cards. In return, Image Data agreed to pay DPS for the information and photographs. According to the agreement, Image Data intended to incorporate the information into a multi-state or national electronic database to be used for identity verification and fraud prevention purposes.[2]

According to the affidavit of Robert Houvener, Image Data's co-founder, president, and CEO, through its "True I.D." database, Image Data electronically provides an image (i.e. photograph) corresponding to the identification provided by a customer to a merchant at the point of sale. The merchant can use the image to verify the customer's identification.

Between September 1998 and April 1, 1999, Image Data operated a pilot test program of its True I.D. system at fifteen retail establishments in South Carolina. During this seven month period, approximately 2,000 transactions occurred. Sloan's image was not displayed during the pilot program.

DPS terminated its contract with Image Data effective March 22, 1999. DPS agreed to refund payments received from Image Data and requested Image Data purge all South Carolina records from its database, return all computer tapes to DPS, and verify that the deletions occurred.

In 1999, the General Assembly passed Act No. 100, Part II, 1999 S.C. Acts 842 (the 1999 Act), prohibiting DPS from selling or providing a private party with social security numbers, photographs, or signatures taken for purposes of a driver's license or personal identification card. The legislature specified social security numbers, photographs, signatures, or digitized images from a driver's license or personal

---

**2.** At some point, driver's license and personal identification card holders were permitted to "opt out" of the Image Data program. At her deposition, Sloan testified she was aware she could opt out of the program, but did not do so because she thought opting out would be "a real hassle."

identification card are not public records.[3]  In the same Act, the General Assembly amended the Freedom of Information Act (FOIA),[4] specifying FOIA does not permit DPS to sell or furnish to a private party social security numbers, photographs, signatures, or other identifying features obtained for the purpose of a driver's license or a personal identification card.  Act No. 100, Part II, § 53, 1999 S.C. Acts 990.[5]  In addition, it amended FOIA to specify that a private person may not use an electronically-stored version of information obtained from a driver's license record for any purpose.  *Id.*

Sloan filed her original complaint in February 1999 alleging invasion of privacy through the unlawful appropriation of her driver's license information and photograph by DPS and Image Data.  She later filed an amended complaint in which she stated DPS disclosed social security numbers to Image Data, that it also disclosed information from personal identification cards in addition to drivers' licenses, and that Image Data intended to use the information not simply to prevent fraud, but to accumulate and to sell information concerning consumers' buying habits.

## ISSUE

Does the purchase/sale of information and images contained on drivers' licenses and state issued identification cards, as authorized by the General Assembly, constitute the tort of misappropriation of personality?

## DISCUSSION

"The right to privacy is correctly defined . . . as the right to be let alone;  the right of a person to be free from unwarranted publicity." *Holloman v. Life Ins. Co. of Virginia*, 192 S.C. 454, 458, 7 S.E.2d 169, 171 (1940).  In South Carolina, there are three separate and distinct causes of action

---

3.  *See* S.C.Code Ann. § 56–3–545 (Supp.2002).

4.  S.C.Code Ann. §§ 30–4–10 to –165 (1991 and Supp.2002).

5.  *See* S.C.Code Ann. §§ 30–4–160 to –165 (Supp.2002).

for invasion of privacy: 1) wrongful appropriation of personality; 2) wrongful publicizing of private affairs; and 3) wrongful intrusion into private affairs. *Swinton Creek Nursery v. Edisto Farm Credit,* 334 S.C. 469, 514 S.E.2d 126 (1999). Wrongful appropriation of personality involves the intentional, unconsented use of the plaintiff's name, likeness, or identity by the defendant for his own benefit. The gist of the action is the violation of the plaintiff's exclusive right at common law to publicize and profit from his name, likeness, and other aspects of personal identity. *Snakenberg v. Hartford Cas. Ins. Co., Inc.,* 299 S.C. 164, 383 S.E.2d 2 (Ct.App.1989).

The trial judge properly determined Image Data did not misappropriate Sloan's driver's license information and photograph. At the time Image Data and DPS entered the Data Access Agreement, the 1997 Act specifically permitted the purchase/sale arrangement contemplated by the contracting parties. Image Data was entitled to rely in good faith on the 1997 Act as authority to enter into its contract with DPS. *See Wyatt v. Cole,* 504 U.S. 158, 168, 112 S.Ct. 1827, 1833, 118 L.Ed.2d 504, 515 (1992) ("... principles of equality and fairness may suggest, ..., that private citizens who rely unsuspectingly on state laws they did not create and may have no reason to believe are invalid should have some protections from liability...."). Because the 1997 Act authorized the transaction between Image Data and DPS, Image Data did not misappropriate Sloan's driver's license information and photograph.[6]

Furthermore, Sloan presented no evidence of the existence of a genuine issue of material fact that Image Data's intended

---

**6.** While not directly addressing the issue of privacy, the United States Supreme Court upheld Congress' authority it enact the Driver's Privacy Protection Act of 1994 (DPPA), 18 U.S.C.A. §§ 2721–2725 (2000) which restricts the sale or release of a driver's personal information. *Reno v. Condon,* 528 U.S. 141, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000). The DPPA, however, permits motor vehicle departments to disclose personal information from driver's records for a number of purposes, one of which is for use by a business to verify the accuracy of personal information submitted to the business and to prevent fraud or pursue legal remedies if the information that the individual submitted to the business is revealed to have been inaccurate. § 2721(b)(3).

use of the driver's license and identification card information was for other than fraud prevention, the stated purpose of the 1997 Act. While Sloan suggested Image Data acquired the information in order to track and sell consumer buying habits, she failed to offer any material evidence to support her claim.

Finally, we recognize Image Data and DPS exceeded the scope of the 1997 Act by purchasing/selling social security numbers. While the transfer of social security numbers was not authorized by the 1997 Act, the information was erroneously transferred from DPS to Image Data.[7] In light of the fact that the transfer was inadvertent and there is no evidence Image Data used the information, the technical violation of the 1997 Act does not bar Image Data from relying on the 1997 Act.

We conclude Sloan failed to present any genuine issue of material fact supporting her claim for misappropriation of personality. Accordingly, the trial judge properly granted summary judgment to Image Data and the order of the lower court is **AFFIRMED.** *Strother v. Lexington County Recreation Comm'n,* 332 S.C. 54, 504 S.E.2d 117 (1998) (summary judgment is proper where there is no genuine issue of material fact and moving party is entitled to judgment as a matter of law).[8]

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.

---

7. At the summary judgment hearing, counsel for DPS stated DPS inadvertently transmitted the social security numbers to Image Data. Counsel for Image Data agreed the Data Access Agreement did not call for release of social security numbers and stated the social security numbers were neither needed nor used by Image Data.

8. Sloan sought to be certified as a class representative of similarly situated plaintiffs. Because of our disposition in this matter, we decline to address the order denying class certification.