663 S.E.2d 492

**AMERICAN CREDIT OF SUMTER, INC., Appellant,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Respondent.**

No. 26509.

Supreme Court of South Carolina.

Heard Feb. 21, 2008.
Decided June 30, 2008.

624

Thomas E. Player, Jr., of Player & McMillan, of Sumter, for appellant.

William Bailey Woods, of Woods Law Firm, of Lexington, for respondent.

Justice MOORE.

Appellant (American Credit) filed an action claiming respondent (Nationwide) acted in bad faith by failing to pay the money due under an insurance policy. Nationwide answered that any claim brought by American Credit would be subject to the Loss Payable Clause of the policy and that this Clause denies coverage to American Credit. The magistrate court granted Nationwide's motion for a directed verdict and the circuit court affirmed. We now reverse.

## FACTS

The insured was the owner of a 1998 Nissan Altima automobile which was financed by American Credit. The automobile was insured with Nationwide for comprehensive and collision coverages, with the insured being shown as the policyholder and with American Credit as the lienholder. The automobile was involved in a collision in Connecticut, which was caused by the driver of another automobile. Damages resulted in the amount of $1,801.67. Allstate, the liability insurance carrier of the at-fault motorist, paid to the insured a sum of money sufficient to pay the costs of repairs to the automobile. The insured failed to have the repairs made to the automobile and later defaulted on the loan by American Credit, causing the automobile to be repossessed in a damaged condition in the amount of $1,801.67.

American Credit filed a claim with Nationwide in the amount of $1,307.67 [1] and contended it was entitled to payment via the Loss Payable Clause in the insurance policy.

The pertinent portion of the Loss Payable Clause states that:

Protection of the lienholder's financial interest will not be affected by any change in ownership of the vehicle insured, nor by any act or omission by any person entitled to coverage under this policy. However, protection under this clause does not apply in any case of conversion, embezzlement, secretion, or willful damaging or destruction, of the vehicle committed by or at the direction of an insured.

After the close of the evidence in the trial, the magistrate granted Nationwide's motion for a directed verdict. The magistrate found the insured received payment from another insurance company for the damage to the automobile and, rather than utilizing these funds to repair the automobile, as required under her financing contract with American Credit, she converted these funds to her own use. The magistrate found that this amounted to a conversion of that portion of the automobile which was damaged. As a result of the conversion, the magistrate found the protection of the lienholder's

---

1.  $1,307.67 represents the cost of repair of the automobile less the $500 deductible as provided in the insurance policy.

financial interest did not apply under the clear language of the Loss Payable Clause.

American Credit appealed to the circuit court. The court ruled the magistrate properly granted Nationwide's motion for a directed verdict. The court found the insured essentially converted that portion of the automobile that was damaged and paid for by Allstate. As a result, any claim American Credit had under the Loss Payable Clause was barred by the provision stating that protection under that Clause does not apply in a case of conversion committed by or at the discretion of the insured. The court stated that when the insured retained the funds she received from Allstate, she was essentially altering the condition of the automobile and accepting payments to the exclusion of the owner or lienholder.

## ISSUE

Is the failure of the insured to utilize the liability insurance proceeds to repair the damaged automobile a conversion of the automobile within the meaning of the Loss Payable Clause of the policy?

## DISCUSSION

A loss payable clause is a type of clause used in insurance contracts by which a lienholder or mortgagee protects its interests in the insured property. There are two types of loss payable clauses: (1) a loss payable or open mortgage clause, and (2) a standard clause. *Nationwide Mut. Ins. Co. v. Hunt*, 327 S.C. 89, 488 S.E.2d 339 (1997). A lienholder's ability to recover on an insurance policy largely depends on the type of clause used in the insurance contract. *Id.* In general, a loss payable or open mortgage clause merely identifies the person or entity that may collect the insurance proceeds and an insured's misconduct bars recovery by the lienholder. *Id.* On the other hand, under a standard clause, the interests of the lienholder in the proceeds of the policy will not be invalidated by the misconduct of the insured. *Id.*

By asserting the insured's misconduct bars American Credit from recovering under the policy, the dissent would find that the Clause at issue is the narrower loss payable or

open mortgage clause. However, the type of clause involved here is a standard clause that contains exceptions, such as the conversion exception, which can preclude recovery by the lienholder. Nationwide's Loss Payable Clause specifically states that "protection of the lienholder's financial interest will not be affected by ... any act or omission by any person entitled to coverage under this policy" except "in any case of conversion" of the vehicle. In other words, Nationwide will not be obligated to make payment to American Credit as a result of the insured misappropriating the funds only if such act constitutes a conversion of the vehicle by or at the direction of the insured. Therefore, contrary to the dissent's view, a plain reading of the Clause extends protection to American Credit's interest in the automobile notwithstanding the insured's misconduct, save for the specified exclusion.[2]

The insurance policy does not define conversion so we must determine whether the failure of the insured to utilize insurance proceeds received from a separate insurer to repair the damaged automobile is a conversion of the automobile within the meaning of Nationwide's Loss Payable Clause.

Insurance policies are subject to the general rules of contract construction. *Century Indem. Co. v. Golden Hills Builders, Inc.*, 348 S.C. 559, 561 S.E.2d 355 (2002). We must give policy language its plain, ordinary, and popular meaning. *Id.* An insurance policy is to be liberally construed in favor of

---

2. Although the dissent would find the Loss Payable Clause at issue is the narrower loss payable, or open mortgage, clause, the issue the parties asked this Court to resolve was not whether American Credit could recover pursuant to the Loss Payable Clause, but rather whether the exclusions contained in the Loss Payable Clause barred American Credit's claim. Nationwide has never argued that the Clause was the narrower loss payable or open mortgage clause, nor did Nationwide assert that *any* misconduct on behalf of the insured barred American Credit's claim. In fact, in its brief to this Court, Nationwide admits that "the policy does provide additional protection to the ... lienholder by indicating that the lienholder's right will not be affected by the acts of the insured." This statement clearly indicates that Nationwide acknowledged that the Clause provided broader protection to a lienholder. In any event, because Nationwide did not argue that this Clause was the narrower loss payable or open mortgage clause, this issue is not preserved. *See Holy Loch Distribs., Inc. v. Hitchcock*, 340 S.C. 20, 531 S.E.2d 282 (2000) (to preserve issue for appellate review, issue must have been raised to and ruled upon by the trial court).

the insured and strictly construed against the insurer. *Kraft v. Hartford Ins. Companies,* 279 S.C. 257, 305 S.E.2d 243 (1983). Further, exclusions in an insurance policy are always construed most strongly against the insurer. *Century Indem. Co. v. Golden Hills Builders, Inc., supra.*

We have stated that conversion is a wrongful act and have defined conversion as the unauthorized assumption in the exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the owner's rights. *SSI Medical Servs., Inc. v. Cox,* 301 S.C. 493, 392 S.E.2d 789 (1990). Conversion may arise by some illegal use or misuse, or by illegal detention of another's chattel. *Id.*

The insured's failure to utilize the insurance proceeds received from the other driver's insurer to repair the damaged automobile is not a conversion. The insured owned the automobile at the time she retained the funds that should have been used to repair the damaged automobile. The insured had not defaulted on the installment contract and the car had not been repossessed; therefore, she was still the owner. What is envisioned by the exception to Nationwide's Loss Payable Clause is the conversion of the insured property, that is, the automobile.[3] No such conversion has occurred here. At all relevant times, the insured has not directed or allowed the ownership of the automobile to be assumed by another to the exclusion of the insured's rights. *See SSI Med. Servs., Inc. v. Cox, supra* (conversion is unauthorized assumption in exercise of right of ownership over goods belonging to another to the exclusion of the owner's rights). *See also Foremost Ins. Co. v. Allstate Ins. Co.,* 439 Mich. 378, 486 N.W.2d 600 (1992) (person cannot convert his own property; intentional burning of mobile home did not amount to conversion within meaning of loss payable clause); *Gibraltar Fin. Corp. v. Lumbermens Mut. Cas. Co.,* 400 Mass. 870, 513 N.E.2d 681 (1987) (burning of an insured automobile by mortgagor did not constitute conversion because, at the time of the arson, no one other than the owner/mortgagor had an immediate right to possess the automobile; therefore, the mortgagee's recovery

---

3. The exception states: "protection under this clause does not apply in any case of conversion ... *of the vehicle* committed by or at the direction of the insured." (Emphasis added).

under the policy was not precluded); *Nationwide Mut. Ins. Co. v. Dempsey,* 128 N.C.App. 641, 495 S.E.2d 914 (1998), *review denied,* 348 N.C. 283, 502 S.E.2d 847 (1998) (automobile policy's loss payable clause which invalidated lienholder's interest only upon insured's conversion of vehicle did not apply when vehicle was destroyed by fire allegedly set by insured since vehicle was not changed from one purpose to another).

Because the exclusion in the insurance policy is to be construed strongly against the insurer and Nationwide failed to define conversion to include the aforementioned facts, the lower courts erred by finding a conversion had occurred when the insured retained the insurance proceeds and failed to repair the automobile. *See Century Indem. Co. v. Golden Hills Builders, Inc., supra* (exclusions in an insurance policy are always construed most strongly against the insurer). *See also Chrysler Credit Corp. v. Dairyland Ins. Co.,* 491 So.2d 402 (La.Ct.App.), *writ denied,* 494 So.2d 1178 (La.1986) (while not determining whether the actions constituted conversion, court held where a policy fails to define the term "loss" it is unclear whether the application by the insured to his personal use of the funds received in settlement from the tortfeasor's insurer is a "loss caused by conversion," thus relieving the insurer of its obligation to pay the claim of the loss payee; the court found, because of the ambiguity, the policy must be construed against the insurer). Accordingly, the decision of the circuit court is

**REVERSED.**

TOAL, C.J., WALLER and BEATTY, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully dissent and would affirm. In my opinion, under the facts of this case, the loss-payable clause does not provide American Credit with a right to recover from Nationwide the amount retained by the defaulting insured after she received payment from a third-party's liability carrier.[4]

---

4. While I do not believe the interpretation of the loss-payable clause controls this case, I disagree with the majority's statement that the clause be strictly construed against Nationwide in favor of American

It has been held that an insured's misconduct bars recovery by the lienholder under a loss-payable clause. *Nationwide Mut. Ins. Co. v. Hunt*, 327 S.C. 89, 93, 488 S.E.2d 339, 341 (1997). Furthermore, the loss-payable clause merely identifies the person who may collect the proceeds, and the lienholder stands in the insured's shoes and is usually subject to the same defenses. *Id.*

In Nationwide's policy with its insured in this case, the loss-payable clause specifically states, "This clause applies to the Comprehensive and Collision coverages provided by this policy." Because, under the facts of this case, Nationwide's coverage was never triggered, the loss-payable clause is simply not involved. Again, the lienholder merely stands in the shoes of the insured. *Hunt, supra.* If Nationwide is not obligated to tender payment to its insured, the loss-payable clause does not inure to the benefit of American Credit. This loss-payable clause applies only in the event of a valid first-party claim under the policy between the insured and Nationwide. American Credit could only receive the benefit of the loss-payable clause should Nationwide have tendered payment to its insured without protecting American Credit's rights as a lienholder, or had otherwise participated in some way to the derogation of American Credit's rights.

In this case, because there was never a first-party claim, I am at a loss to discern why Nationwide is now liable for its insured's misapplication of proceeds received from the at-fault party's carrier. Nationwide's obligation does not extend to insuring American Credit against losses over which Nationwide had no control.[5] American Credit must look solely to the insured who failed to submit to American Credit insurance proceeds from Allstate when she defaulted on the loan.[6]

---

Credit. Nationwide's failure to define the term "conversion" in the insured's policy does not necessarily require us to apply that term narrowly to these facts. The loss-payable clause in this case is not an exclusion of coverage for the insured but exists for the benefit of a lienholder who is not a party to the insurance contract.

**5.** Indeed, there is no indication that Nationwide was ever made aware of the event which occasioned damage to the vehicle.

**6.** Insured was under no obligation to American Credit to repair her vehicle with the money paid by Allstate so long as she made payments on the loan from American Credit.

In my opinion, the loss-payable clause found in the insurance contract between Nationwide and its insured did not protect American Credit's interest where that interest was damaged by the acts of a third-party or by the insured. I would affirm.