684 S.E.2d 756

**Joanne Levesque GIGNILLIAT, Appellant,**

**v.**

**GIGNILLIAT, SAVITZ & BETTIS, L.L.P., Respondent.**

**No. 26735.**

Supreme Court of South Carolina.

Heard April 8, 2009.

Decided Oct. 12, 2009.

Rehearing Denied Nov. 18, 2009.

454

Thomas L. Moses and Timothy J. Monahan, both of Monahan & Moses, of Greenville, for Appellant.

John Thomas Lay and Jenkins M. Mann, both of Ellis Lawhorne & Sims, of Columbia, and W. Duvall Spruill, of Turner, Padget, Graham & Laney, of Columbia, for Respondent.

Justice BEATTY.

Joanne Levesque Gignilliat (Mrs. Gignilliat) appeals from an order granting summary judgment to Gignilliat, Savitz & Bettis, L.L.P. (GSB) on her claims arising from GSB's continued use of her husband's name in the law firm name after his death. We affirm.

## I. FACTS

Julian Gignilliat (Gignilliat) was a founding partner in 1968 of what became the GSB law firm. The firm did not have a written partnership agreement. Gignilliat was diagnosed with a serious illness in 2001. Gignilliat died on June 22, 2002. It is undisputed that Gignilliat, cognizant of his terminal illness, requested that GSB continue to use his name after his death and that GSB not be sued.[1]

The Personal Representative (PR) of the Estate of Julian Gignilliat filed an action against GSB and six partners in the firm at Mrs. Gignilliat's request. The PR alleged GSB continued to use and profit from the Gignilliat name without the consent of Gignilliat's estate and without making compensation for its use.

---

1. Mrs. Gignilliat testified that her deceased husband visited her in a dream and said that he did not mind if GSB discontinued the use of his name. Nonetheless, this ghostly visit is not a revocation of consent.

A Consent Order was filed wherein the PR of the estate assigned Mrs. Gignilliat the sole right to any of the estate's claims arising out of the complaint. Subsequently, Mrs. Gignilliat filed an amended complaint naming herself as the plaintiff in which she sought a declaratory judgment regarding the defendants' right to continue using the Gignilliat name without consent, and she asserted claims for (1) infringement on the right of publicity, (2) conversion, (3) unjust enrichment, and (4) quantum meruit. She sought damages and an injunction preventing further use of the Gignilliat name without compensation.

The circuit court granted GSB's motion for summary judgment, finding no genuine issues of material fact existed as to any of these claims. The circuit court noted, "No South Carolina case has ever directly addressed whether a law firm may continue to use a deceased partner's name." Mrs. Gignilliat appeals, arguing the circuit court erred in granting summary judgment to GSB on all of her claims.[2]

## II. LAW/ANALYSIS

Rule 56(c) of the South Carolina Rules of Civil Procedure provides that a trial court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP.

 "In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party." *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 378–79, 534 S.E.2d 688, 692 (2000). An appellate court reviews the granting of summary judgment under the same standard applied by the trial court under Rule 56(c), SCRCP. *Id.* at 379, 534 S.E.2d at 692. "Summary judgment should not be granted even when there is no dispute as to evidentiary facts if there is dispute as to the conclusion to be drawn from those facts." *Id.* at 378, 534 S.E.2d at 692.

---

**2.** Summary judgment was granted to the individual law firm partners in a separate order that is not at issue here; therefore, the individual partners are not parties to this appeal.

## A. RIGHT OF PUBLICITY/WRONGFUL APPROPRIATION

Mrs. Gignilliat first contends the circuit court erred in granting summary judgment to GSB on her claim for infringement on the right of publicity. We disagree.

In her amended complaint, Mrs. Gignilliat asserted a claim entitled "Infringement on the Right of Publicity," in which she alleged (1) she owns an enforceable right in the Gignilliat identity, (2) GSB is using some aspect of Gignilliat's identity or persona (his surname) without permission and in a manner that makes Julian Gignilliat identifiable by GSB's use, and (3) GSB's use of the Gignilliat name is likely to cause damage to the commercial value of that persona. Mrs. Gignilliat maintained she was entitled to compensation for the use of Gignilliat's name by GSB and an injunction prohibiting its further use without just compensation.

The circuit court granted GSB's motion for summary judgment, finding South Carolina has not recognized the tort of infringement on the right of publicity. The court noted South Carolina does recognize the tort of wrongful appropriation of personality, but stated Mrs. Gignilliat did not label her cause of action as wrongful appropriation and she would not be entitled to recovery under this theory, in any event.

The court further ruled Mrs. Gignilliat was not entitled to any recovery for use of the Gignilliat name because her claims for damages concerned only the value of professional goodwill, which has no value apart from the individual professional. The court also found the South Carolina Rules of Professional Conduct prevent payment to Mrs. Gignilliat because they prohibit lawyers from sharing fees with nonlawyers. Finally, the court ruled any claim for publicity or wrongful appropriation does not survive the death of the named individual.

### (1) Classification of Tort

Initially, we note that the character of a complaint is determined by its factual allegations, not the label assigned to it.

"The right of publicity is best defined as the 'inherent right of every human being to control the commercial use of his or

her identity.'" Thomas Phillip Boggess V, *Cause of Action for an Infringement of the Right of Publicity*, 31 *Causes of Action 2d* 121, 144 (2006) (quoting McCarthy, The Rights of Publicity and Privacy 2d § 1:3). "The focus is on commercial use and the right to control that use and to be compensated monetarily for that use; whereas, the right to privacy addresses damages of a person's mental psyche." *Id.* at 141.

Professor William Prosser identified four basic torts under the right to privacy: (1) intrusion, (2) disclosure, (3) false light, and (4) appropriation. *Id.* at 139. The first three torts are based upon the idea that a person has the right to be left alone, whereas the fourth is based on the theory that a person has the right to control his or her identity. *Id.* The term "right of publicity" was coined to break away from the theory of the right to privacy. *Id.* at 138. Most states now recognize some form of the right of publicity, either under the common law or by statute. *Id.* at 140.

Jurisdictions have recognized a right of publicity either by expressly acknowledging a separate tort for the right of publicity or by finding it is encompassed within the four classic privacy torts, specifically, wrongful appropriation. *See Pooley v. Nat'l Hole-In-One Ass'n*, 89 F.Supp.2d 1108, 1111 (D.Ariz. 2000) (noting "[t]he common law right of privacy provides protection against four distinct categories of invasion: (1) intrusion upon a plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about a plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness," and this fourth category "is commonly referred to as appropriation ... or the right of publicity"); *Winterland Concessions Co. v. Sileo*, 528 F.Supp. 1201, 1213 (D.Ill.1981) ("One of the species of the right of privacy recognized by the cases and the commentators is the right of publicity. Violation of this right constitutes the tort of appropriation of a plaintiff's name or likeness for [the] defendant's benefit.").

We have previously stated that South Carolina recognizes three distinct causes of action under the rubric of invasion of privacy:

In South Carolina, there are three separate and distinct causes of action for invasion of privacy: 1) wrongful appro-

priation of personality; 2) wrongful publicizing of private affairs; and 3) wrongful intrusion into private affairs. *Swinton Creek Nursery v. Edisto Farm Credit,* 334 S.C. 469, 514 S.E.2d 126 (1999). Wrongful appropriation of personality involves the intentional, unconsented use of the plaintiff's name, likeness, or identity by the defendant for his own benefit. The gist of the action is the violation of the plaintiff's exclusive right at common law to publicize and profit from his name, likeness, and other aspects of personal identity. *Snakenberg v. Hartford Cas. Ins. Co.,* 299 S.C. 164, 383 S.E.2d 2 (Ct.App.1989).

*Sloan v. South Carolina Dep't. of Pub. Safety,* 355 S.C. 321, 325–26, 586 S.E.2d 108, 110 (2003).

 Encompassed in these three recognized torts is the infringement on the right of publicity; it is denominated wrongful appropriation of personality. It addresses the plaintiff's right to the commercial protection of his name, likeness, or identity. See *id.* at 326, 586 S.E.2d at 110 (stating wrongful appropriation of personality concerns the plaintiff's right at common law to publicize and profit from his name or identity).

In fact, we have recognized this cause of action in some form since at least 1940. In *Holloman v. Life Insurance Co. of Virginia,* 192 S.C. 454, 458, 7 S.E.2d 169, 171 (1940), we considered the following question: "Does the invasion of privacy by a commercial use of plaintiff's name against her consent entitle plaintiff to damages?" We answered in the affirmative:

The right of privacy is one which was not definitely recognized by the law until comparatively recent times. But we find ourselves in agreement with a number of authorities to the effect that the violation of such a right is under certain circumstances a tort which would entitle the injured person to recover damages. But the right of privacy is correctly defined in 21 R.C.L. 1196 as "the right to be let alone; the right of a person to be free from unwarranted publicity". Or more specifically but less accurately, "the right to live without one's name, picture or statue, or that of a *relative,* made public against his will".

*Id.* (emphasis added).

 We hold South Carolina does recognize the tort of infringement on the right of publicity. The facts alleged, not

just the name of the cause of action used, should be examined in assessing whether a valid claim has been asserted. *Cf. Baird v. Charleston County,* 333 S.C. 519, 527, 511 S.E.2d 69, 73 (1999) (stating when considering a motion to dismiss, a court should look to the factual allegations made in the complaint, and the "motion may not be sustained if the facts alleged and inferences therefrom would entitle the plaintiff to any relief on any theory").

### (2) Survivability of Claim

We further hold the right to control the use of one's identity is a property right that is transferable, assignable, and survives the death of the named individual. The Supreme Court of Georgia has observed, "the trend since the early common law has been to recognize survivability" of this right. *Martin Luther King, Jr., Ctr. for Soc. Change, Inc. v. Am. Heritage Prods., Inc.,* 250 Ga. 135, 296 S.E.2d 697, 705 (1982) (stating appropriation of another's name and likeness without consent and for the financial gain of the appropriator is a tort and holding that the right of publicity survives the death of the owner and is inheritable and devisable).

The Georgia court reasoned that the right of publicity is assignable during a person's lifetime because, "without this characteristic, full commercial exploitation of one's name and likeness is practically impossible." *Id.* at 704. Likewise, if such rights are assignable, they should also be inheritable and devisable. *Id.; see also McFarland v. Miller,* 14 F.3d 912 (3d Cir.1994) (concluding the right of publicity is a property right that survives the death of an individual); *Prima v. Darden Restaurants, Inc.,* 78 F.Supp.2d 337 (D.N.J.2000) (holding, in a case involving the widow of a music performer, that New Jersey law recognizes the right of publicity as a property right that descends to the named person's estate upon his death); *Estate of Presley v. Russen,* 513 F.Supp. 1339 (D.N.J.1981) (deciding the right of publicity is a property right rather than a personal right that is attached only to the individual and that it is assignable during the person's lifetime and descends upon the individual's death like any other intangible property right).

Moreover, it appears that this Court recognized the survivability of the claim in *Holloman* when it defined the right of

privacy as "the right to live without one's name, picture or statue, or that of a relative, made public against his will." *Holloman,* 192 S.C. at 458, 7 S.E.2d at 171. The inclusion of the right to protect the privacy of a relative necessarily contemplates survivability of the right.

### (3) Nature of Damages

■ The circuit court found that "[t]he damages alleged in each of these causes of action [asserted by Mrs. Gignilliat] result *solely* from the alleged retention of the professional goodwill value of the Gignilliat name." (Emphasis in original and footnote omitted.) The circuit court stated that Mrs. Gignilliat "cannot claim value in or damages resulting from the professional goodwill of Gignilliat's name" because professional goodwill does not exist separate and apart from the individual. The trial court misconstrued Mrs. Gignilliat's claim as one solely for goodwill.

We have defined "goodwill" in general as follows:

Goodwill may be properly enough described to be the advantage or benefit which is acquired by an establishment beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices.

*Donahue v. Donahue,* 299 S.C. 353, 359, 384 S.E.2d 741, 745 (1989) (quoting *Levy v. Levy,* 164 N.J.Super. 542, 397 A.2d 374, 377 (1978)).

"Professional goodwill" has been further defined as having the following attributes:

It attaches to the person of the professional man or woman as a result of confidence in his or her skill and ability. It does not possess value or constitute an asset separate and apart from the professional's person, or from his individual ability to practice his profession. It would be extinguished in the event of the professional's death, retirement or disablement.

*Id.* (quoting *Rathmell v. Morrison,* 732 S.W.2d 6, 17 (Tex.App. 1987) (internal citation omitted)).

In *Donahue,* we held the family court erred in placing a value upon the goodwill of the husband's professional practice and attempting to equitably divide it. *Id.* at 360, 384 S.E.2d at 745. We noted that the value of goodwill is inherently speculative because it is totally dependent on the professional. *Id.* Further, in *Keane v. Lowcountry Pediatrics,* 372 S.C. 136, 641 S.E.2d 53 (Ct.App.2007), the Court of Appeals held that professional goodwill has no value that exists separate and apart from the professional.

We agree with the circuit court's finding that there is no separate value for goodwill in a professional practice, but we conclude the circuit court erred in characterizing Mrs. Gignilliat's claim as one strictly for goodwill. Mrs. Gignilliat is challenging GSB's assertion that it has the unfettered right to use the Gignilliat name without compensation, which is a distinguishable property right.

Ordinarily the partners remaining after one partner retires do not have an absolute right to continue using the partnership's old name, but such right may be acquired by express agreement with the retiring partner:

> Unless an agreement provides therefor, the partners remaining after one of them has retired are not entitled to the continued use of the old name. They do not secure that right by virtue of the conveyance to them by the retiring partner of all his right, title, and interest in the partnership business, property, or assets, or even the good will where it rests on the personal attributes of the partners.

68 C.J.S. *Partnership* § 226 (1998) (footnotes omitted). Section 277 of Corpus Juris Secundum further observes that where a partnership is dissolved by the death of a partner, the surviving partners may have the right to continue the use of the firm name, in the absence of a contrary agreement, citing the case of *Mendelsohn v. Equitable Life Assurance Society,* 178 Misc. 152, 33 N.Y.S.2d 733 (App. Term 1942) as authority for this proposition. *Id.* § 277. *Mendelsohn,* however, extended the New York common law previously applicable to trade firms to professional partnerships to achieve this result, while simultaneously observing there was an absence of au-

thority in this regard applicable to professional partnerships. *Mendelsohn*, 33 N.Y.S.2d at 734. Additionally, the *Mendelsohn* court relied upon the fact that there was express consent to the use of the partners' names. *Id.*

We conclude the circuit court erred in finding Mrs. Gignilliat's claims fail as a matter of law because she is not entitled to seek payment for goodwill. Mrs. Gignilliat's claims concern the right to use of the Gignilliat name for commercial purposes, which is a recognized property right that is distinguishable from goodwill. Although we acknowledge there is a limited market available for the right to use the name in the legal field,[3] we agree with other jurisdictions that have found there is a presumption of nominal damages in similar cases involving the infringement on the right to control the use of one's identity:

> Misappropriation of identity is a tort arising from the right to privacy and is designed to prevent the commercial use of one's name or image without consent. To plead misappropriation of identity, the plaintiff must claim "an appropriation without consent, of one's name or likeness for another's use or benefit." *A claimant alleging misappropriation of identity need not prove actual damages, because the court will presume damages if someone infringes another's right to control his identity.*

*Petty v. Chrysler Corp.*, 343 Ill.App.3d 815, 278 Ill.Dec. 714, 799 N.E.2d 432, 441–42 (2003) (internal citations omitted) (emphasis added); *see also Ainsworth v. Century Supply Co.*, 295 Ill.App.3d 644, 230 Ill.Dec. 381, 693 N.E.2d 510, 514 (1998) (holding the trial court erred in granting summary judgment to the defendant on the basis the plaintiff could not establish actual damages for his claim of misappropriation of his likeness; the Appellate Court of Illinois held the law presumes nominal damages in such an instance and noted that to hold otherwise "overlooks ... the venerable principle that the law will presume that damages exist for every infringement of a

---

3. The South Carolina Rules of Professional Conduct would prevent another law firm besides GSB from simply purchasing the Gignilliat name without having any relationship to Gignilliat. See Comment 1 to Rule 7.5 of Rule 407, SCACR ("[I]t is misleading to use the name of a lawyer not associated with the firm or a predecessor of the firm or the name of a non lawyer.").

right"); [4] *James v. Bob Ross Buick, Inc.,* 167 Ohio App.3d 338, 855 N.E.2d 119, 124 (2006) (concluding the trial court erred in granting summary judgment on the plaintiff's claim of misappropriation of his name, stating, "a plaintiff need not establish actual damages in order to prevail on a misappropriation-of-name claim" and that "a plaintiff may seek to recover nominal damages for claims of misappropriation of the plaintiff's name or likeness").

The presumed nominal damages recognized by courts are not considered to be the same as goodwill. However, we recognize that, on the facts of this case, damages other than the presumed nominal damages would be difficult to prove and even more difficult to distinguish from professional goodwill.[5]

■ We hold South Carolina does recognize the right of publicity, that the right survives death, and that nominal damages are presumed. Notwithstanding this holding on the recognition of the right of publicity and its presumed damages, however, we find GSB was entitled to summary judgment as a matter of law. An infringement on the right of publicity requires the unconsented use of the plaintiff's name, likeness, or identity by the defendant for the defendant's own benefit. Here it is undisputed that Gignilliat requested that GSB continue to use his name after his death. There is no evidence to the contrary.[6]

---

4. The tort of wrongful appropriation of personality was recognized in 1940; it is illogical to conclude that a tort can exist without any potential for compensation under any circumstances.

5. We note the circuit court, citing Rule 5.4(a) of the South Carolina Rules of Professional Conduct, found the payment of damages would constitute an impermissible fee-splitting arrangement because the money used to pay goodwill to Mrs. Gignilliat would come from legal fees generated by the remaining partners and associates of GSB. As stated above, we find Mrs. Gignilliat was not seeking solely goodwill damages. Moreover, a law firm's payment of tort damages does not constitute an impermissible fee-splitting arrangement as contemplated by the rule.

6. This Court takes judicial notice of the custom and practice in this state of law firms continuing to use the names of deceased members in their firm names. Heretofore, the basis has been the taking for granted that the deceased partner would consent. Hereafter, it is presumed, unless proven otherwise, that the deceased partner consented to the continued use of his or her name in the partnership's name.

## B. CONVERSION

The circuit court ruled GSB was entitled to summary judgment on Mrs. Gignilliat's claim for conversion because "[c]onversion does not apply to a claim for the non-tangible property rights at issue in this matter." The court stated, "The Gignilliat name is neither tangible nor represented by or connected to something tangible."

Mrs. Gignilliat argues the grant of summary judgment to GSB on her conversion claim was error and asserts she "is not aware of any South Carolina jurisprudence on the issue of whether intangible personal property, such as the right of publicity, may give rise to an action for conversion."

This Court has "defined conversion as the unauthorized assumption in the exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the owner's rights." *Am. Credit of Sumter, Inc. v. Nationwide Mut. Ins. Co.,* 378 S.C. 623, 629, 663 S.E.2d 492, 495 (2008); *accord Moseley v. Oswald,* 376 S.C. 251, 254, 656 S.E.2d 380, 382 (2008); *SSI Med. Servs., Inc. v. Cox,* 301 S.C. 493, 498, 392 S.E.2d 789, 792 (1990). "To establish the tort of conversion, the plaintiff must establish either title to or right to the possession of the personal property." *Moseley,* 376 S.C. at 254, 656 S.E.2d at 382.

Our courts have previously held that intangible rights are normally not the proper subject for a conversion claim. In *Hawkins v. City of Greenville,* 358 S.C. 280, 297, 594 S.E.2d 557, 566 (Ct.App.2004), the Court of Appeals observed that an action for conversion ordinarily lies only for personal property which is tangible or which is represented by or connected with something that is tangible.

"An action for conversion ordinarily lies only for personal property that is tangible, *or to intangible property that is merged in, or identified with, some document.*" 18 Am.Jur.2d *Conversion* § 7 (2004) (emphasis added) (footnote omitted); *see also* H.D. Warren, Annotation, *Nature of Property or Rights Other Than Tangible Chattels Which May Be Subject of Conversion,* 44 A.L.R.2d 927, 929 (1955) ("[I]t is ordinarily held that an action for conversion lies only for personal property which is tangible, or at least represented by or

connected with something tangible, and not for indefinite, intangible, and incorporeal species of property.").

While courts are recognizing that certain intangible rights may properly be the object of a suit for conversion, they are often limited to instances where the rights have some documented basis to support them. *See* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts*, § 15, at 91–92 (5th ed. 1984) (observing the rule that only personal property may be the subject of a conversion claim "has been discarded to some extent by all of the courts," but noting "[t]he process of expansion has stopped with the kind of intangible rights which are customarily merged in, or identified with[,] some document").

We are reluctant to expand the tort of conversion as it relates to intangible property and conclude that it should be limited to intangible property rights that are identified with some document. In the current appeal, the alleged property right Mrs. Gignilliat sought to enforce was intangible and there was no documentation evidencing this right. Thus, it is not properly subject to a claim for conversion and we hold the circuit court properly granted summary judgment to GSB on Mrs. Gignilliat's claim for conversion.

## C. QUANTUM MERUIT AND UNJUST ENRICHMENT

█ Mrs. Gignilliat lastly argues the circuit court erred in granting summary judgment to GSB on her claims for quantum meruit and unjust enrichment. Mrs. Gignilliat asserts she has established the necessary elements by showing Gignilliat spent a lifetime developing the GSB law firm, GSB has derived a substantial benefit from carrying on the practice under the Gignilliat name, and it would be inequitable for GSB to retain this benefit without compensating Gignilliat's estate.

█ "This Court has recognized quantum meruit as an equitable doctrine to allow recovery for unjust enrichment." *Columbia Wholesale Co. v. Scudder May N.V.*, 312 S.C. 259, 261, 440 S.E.2d 129, 130 (1994). *"[Q]uantum meruit*, quasi-contract, and implied by law contract are equivalent terms for an equitable remedy." *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 341 S.C. 1, 8, 532 S.E.2d 868, 872 (2000).

■ To prevail under this theory, a plaintiff must show the following elements: "(1) [a] benefit conferred by [the] plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value." *Id.* at 8–9, 532 S.E.2d at 872; *accord Smith–Hunter Constr. Co. v. Hopson,* 365 S.C. 125, 616 S.E.2d 419 (2005).

■ We affirm the circuit court's grant of summary judgment on this claim. It is axiomatic that a claim for quantum meruit will not lie absent evidence of unjust enrichment. Unlike plaintiff's claim of wrongful appropriation/right of publicity where nominal damages are presumed at law, quantum meruit requires a showing of actual damages resulting from the wrongful retention of benefits (goods or services) by the defendant. Here, Mrs. Gignilliat has failed to offer any evidence of any goods or services bestowed upon GSB. The general argument that GSB "originated business" by associating itself with the Gignilliat name is too speculative. As such, it amounts to no more than an impermissible claim for professional goodwill.

We recognize that the use of the Gignilliat name has some value to GSB, otherwise this litigation would not exist. However, Mrs. Gignilliat has failed to offer any evidence that this value is anything more than sentimental. Thus, her claim for quantum meruit/unjust enrichment fails.

## III. CONCLUSION

Based on the foregoing, we affirm the grant of summary judgment to GSB on Mrs. Gignilliat's claims for infringement on the right of publicity/wrongful appropriation of personality, conversion, and quantum meruit/unjust enrichment.[7]

**AFFIRMED.**

---

7. Justice Pleicones would grant summary judgment on the publicity tort based on his conclusion that the common law grants surviving partners the right to continue the use of a deceased partner's name, and because South Carolina recognizes the practice by statute and comments to Rule 7.5 of Rule 407, SCACR.

It is axiomatic that ethical rules for lawyers do not and cannot create substantive rights and certainly cannot deprive one of property. Sec-

tion 33–41–1070(10) of the South Carolina Code is offered as support for a partnership's continued use of a deceased partner's name. However, it should be noted that this law is designed to protect the deceased partner's property and makes no mention of the partnership's right to continued use of the deceased partner's name. Section 33–41–1070(10) protects a deceased partner's property from debts incurred by a partnership that continued to use the deceased partner's name.

*Mendelsohn v. Equitable Life Assurance Society*, 178 Misc. 152, 33 N.Y.S.2d 733 (App. Term 1942) is offered in support of the proposition that the common law authorizes the continued use of a deceased partner's name in a professional partnership. To determine whether or not Mendelsohn is applicable to this case, *Mendelsohn* deserves a closer look.

The issue in *Mendelsohn* was whether a pleading (Answer) could be drafted on behalf of the defendant by a law firm whose name included the names of deceased partners. The continued use of the deceased partners' names without consent was not an issue. The court expressly noted "there has always been an understanding and agreement between the partners" of the law firm that, in the event of the death or retirement of a partner, "the remaining partners shall own the exclusive right to the firm name[.]" *Id.* at 734. *Mendelsohn* recognized that "[a]lmost the entire body of the adjudicated cases dealing with the right to continue a firm name after dissolution refers to ordinary trades rather than professional partnerships." *Id. Mendelsohn* did not cite any authority for its decision to extend the common law applicable to trade or business firms to professional partnerships. Rather, the court did so on the basis it discerned no reason to apply a different rule to professional partnerships and the use of the firm name was sustainable by reason of an agreement between the partners. *Id.* Thus, *Mendelsohn* applied the New York common law authority used for ordinary trade or business firms. *Id.* (citing *Caswell v. Hazard*, 121 N.Y. 484, 24 N.E. 707 (1890)). Further, later cases in New York stated the use of a firm name was purely by statutory authority. *See Fisk v. Fisk, Clark & Flagg*, 37 Misc. 737, 76 N.Y.S. 482, 484 (Special Term 1902) ("[T]he right to continue the use of a firm name after the death of a partner is, in this state, purely a matter of statutory permission. The general rule is that a firm name cannot be so continued if it includes the name of the deceased partner. In order to justify the continued use of the name, the case must be shown to fall within one of the exceptions prescribed by statute. . . .").

The concurring opinion includes no citation to South Carolina common law or English common law that gives a professional partnership the right to continue the use of the name of a deceased partner without consent. The general rule is that the successors to the old business must not, without express agreement, use the old firm name so as to convey the idea that the retiring individuals are still connected with it. *Rowell v. Rowell*, 122 Wis. 1, 99 N.W. 473 (1904). However, where the name of an individual has continued to be used after his death, so that the name does not designate any existing individual, and has practically become an artificial one, designating nothing but the establishment, the general rule is not applicable. *Id.* at 479 (citing *Slater v. Slater*, 175

WALLER, Acting Chief Justice, KITTREDGE, J., and Acting Justice JAMES E. MOORE, concur.

PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES.

I concur in the decision to affirm the circuit court order, but write separately on the publicity tort since I conclude that appellant has not stated a cause of action.

Appellant, as assignee of her late husband's estate, sued the law firm (respondent) of which her husband had been a named partner at the time of his death, for respondent's continuing use of his name after his death. At common law, the surviving partners in a business firm had the right to continue to use the firm name after the death of a partner. *See Mendelsohn v. Equit. Life Assur. Soc.,* 178 Misc. 152, 33 N.Y.S.2d 733 (N.Y.App.Term.1942). In the absence of a statutory bar or ethical prohibition, local custom permits continued use of a deceased partner's name in a professional partnership unless the partnership agreement provides otherwise. *Id.; see also 68 C.J.S. Partnership* § 277 (1998).[8] South Carolina recognizes the practice by statute,[9] and in the comments to Rule 7.5 of Rule 407, SCACR.[10]

By custom and practice, a law firm in South Carolina may continue to use the name of a deceased partner unless there is

N.Y. 143, 67 N.E. 224 (1903)). This is not the status of GSB at this time.

8. Section 277 discusses the use of a deceased partner's name while 68 C.J.S. *Partnership* § 226 is concerned with continued use of a name after a partner's retirement.

9. *See* S.C.Code Ann. § 33–41–1070(10) (2006).

10. Comment 1 provides in relevant part:

 A firm may be designated by the names of all or some of its members, by the names of deceased members where there has been a continuing succession in the firm's identity or by a trade name such as the "ABC Legal Clinic".... It may be observed that any firm name including the name of a deceased partner is, strictly speaking, a trade name. The use of such names to designate law firms has proven a useful means of identification. However, it is misleading to use the name of a lawyer not associated with the firm or a predecessor of the firm or the name of a non lawyer.

an agreement to the contrary. In my opinion, appellant, having asserted no such agreement, has no cause of action against respondent. I would therefore affirm the circuit court's order.